**EVANSTON INSURANCE CO., Plaintiff,**

v.

**Kenneth TREISTER and the Government of the Virgin Islands, Defendants.**

**Civ. A. No. 1988/295.**

District Court,
Virgin Islands.
D. St. Croix.

May 20, 1992.

Sheridan Weissenborn, Papy, Weissenborn & Papy, Miami, Fla., for Evanston Ins. Co.

Gerald Groner, Christiansted St. Croix, Virgin Islands, for Treister.

Joel Holt, Christiansted, St. Croix, Virgin Islands, for Government of Virgin Islands.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge, Sitting by Designation.

This is a declaratory judgment diversity action in which Evanston Insurance Company ("Evanston") has requested that this Court determine its liability under a claims-made, architectural and engineering professional liability policy which it issued to Kenneth Treister ("Treister") in the amount of one million dollars. At issue is whether Evanston is liable under the policy for a settlement entered into between Treister and the Government of the Virgin Islands ("Government") for damages aris-

ing from Treister's allegedly negligent design and his allegedly negligent approval of the construction of the water and sewer lines at the Paradise Mills housing project on St. Croix, Virgin Islands. Under the settlement, a consent judgment was entered against Treister and in favor of the Government in the amount of one million dollars, with the actual amount of recovery limited to the amount recovered by Treister under the insurance policy. For the reasons set forth below, this Court finds that Evanston must indemnify Treister under the terms of the insurance policy for the settlement entered into between Treister and the Government. This Court, accordingly, will issue a declaratory judgment ordering Evanston to indemnify Treister by satisfying the consent judgment entered against Treister by paying to the Government the sum of one million dollars minus the $5,000.00 deductible, plus prejudgment interest as provided by Virgin Islands law accrued from the date on which the judgment against Treister was entered, which was September 28, 1988, to the date of this Court's Order.

This declaratory judgment action has its roots in a class action suit brought by residents of the Paradise Mills housing project on St. Croix, Virgin Islands, after they became victims of a typhoid outbreak in 1985. The typhoid outbreak was allegedly caused by the negligent installation of the water and sewer lines. The plaintiffs in the class action (hereinafter sometimes referred to as "typhoid victims" or the "plaintiff class") brought suit against Alcoa Properties, Inc. ("Alcoa"), Housing Corporation of America ("HCA"), Housing Corporation of America—Virgin Islands ("HCA—VI"), Rexco Industries, Inc. ("Rexco"), Rexach Contruction Co., Inc. ("Rexach"), the Government of the Virgin Islands ("Government"), and Kenneth Treister ("Treister") in Civil Action Nos. 1985/213–246, 1985/288–292, 1986/73, 1987/89, and 1987/90.

In the class action, the plaintiff class alleged that Treister, as the architect of record for the Paradise Mills project, had been negligent in the design and approval of the construction of the water and sewer

lines at Paradise Mills and that they had contracted typhoid as a result of his negligence. An agreement was reached between Treister and the plaintiff class in which Treister agreed to assist the plaintiff class in their efforts to pierce the corporate veil of Alcoa, and in return, the plaintiff class agreed not to oppose Treister's motion for summary judgment in their class action against him. On January 11, 1988, Chief Judge David O'Brien, now deceased, entered summary judgment in favor of Treister in the action brought against him by the plaintiff class.

In the same class action, the Government cross-claimed against Treister, seeking damages against Treister for his negligent design and his negligent approval of the construction of the water and sewer lines, in violation of Virgin Islands law. During discovery, an expert proffered by the Government placed the cost of replacing the water and sewer lines at the Paradise Mills project at $1,400,000.00.

During the class action and the proceedings in connection with the Government cross claim, Treister was represented by his personal counsel and by counsel selected by Evanston to defend him. Evanston's defense of Treister, however, was under a reservation of rights letter by which Evanston agreed to defend Treister without admitting coverage under the insurance policy. That policy was limited to coverage in the amount of $1,000,000.00 minus a deductible of $5,000.00. Since Evanston had taken the position that Treister was not covered by the insurance policy for the claims made by the Government in its cross claim, Treister faced a potential personal liability of $1,400,000.00.

Treister moved for summary judgment on the Government's cross claim, which Chief Judge O'Brien denied on June 6, 1988, on the ground that there were genuine issues of material fact.

Settlement negotiations between the Government and Treister on the Government's cross claim had been ongoing since January, 1988. At these negotiations, Treister was represented by his personal

counsel and by the counsel selected for him by Evanston. Correspondence between these attorneys and the attorney for the government shows that Evanston was kept aware of the status of these negotiations.

Trial on the Government's cross claim against Treister was scheduled to begin in September, 1988. On August 3, 1988, Evanston, which had never agreed to extend coverage, served its complaint for declaratory judgment on all counsel participating in the settlement discussions. In its complaint, Evanston requested a finding of the court that it had no liability to Treister under the terms of the insurance policy.

As stated heretofore, Treister faced a potential personal liability of $1.4 million on the Government's cross claim. Having received Evanston's complaint for declaratory judgment, Treister notified Evanston that he had reached a proposed settlement with the Government. In a letter dated August 8, 1988, Treister stated that he intended to execute the settlement agreement unless, by August 15, 1988, Evanston agreed to extend coverage and defense to him without reservation on the Government's cross claim. Evanston did not agree. Instead, Evanston filed its declaratory judgment action with the court on August 26, 1988, twenty-three days after it had been served on counsel.

On September 8, 1988, the Government and Treister entered into a settlement agreement in which it was agreed that judgment would be entered against Treister in favor of the Government in the amount of one million dollars, with the understanding that Treister's liability under the settlement agreement and judgment was limited to the extent of Evanston's liability to Treister under the insurance policy. This settlement agreement was filed of record as a consent judgment on September 28, 1988.

On June 30, 1989, Evanston amended its declaratory judgment action to specifically request this Court to rule on whether Evanston is liable under the policy to pay the amount of the settlement. In its amended declaratory judgment action, Evanston asserted, first, that it had no liability to Treis-

ter for any acts, errors or omissions that took place prior to December 31, 1972, because Exclusion II, the so-called "employee exclusion," applied, in that Treister, prior to December 31, 1972, was president and an employee of HCA, the corporation that had developed the Paradise Mills project. Second, Evanston asserted that there could be no liability to Treister for acts, errors, or omissions that took place after December 31, 1972, because Treister himself contended that he did "nothing" on the Paradise Mills project after that date. Third, Evanston asserted that Exclusion XI applied, in that Treister's acts, errors and omissions had been the result of fraud and misrepresentation. Fourth, Evanston asserted that the pollution exclusion endorsement to the policy excluded coverage, in that the claim was based upon the discharge or release of waste materials into the water supply. Finally, Evanston asserted that Treister's settlement with the Government was entered into in bad faith, in violation of the terms of the insurance policy, and/or collusively with the Government, based on Evanston's contention that Treister's participation in the alleged wrongdoing was "minimal."

Evanston and Treister filed cross motions for summary judgment, which Acting Chief Judge Stanley Brotman denied on September 18, 1990, with the instruction that the parties submit additional briefing concerning the exclusions of the policy. On August 20, 1991, Acting Chief Judge Brotman again denied the cross motions for summary judgment on the ground that there were genuine issues of material fact—and hence the trial came before this judge on January 23, 1992.

This Court has determined that there is ample evidence on which a court or jury could find Treister liable to the Government on its cross claim for his negligent design and his negligent approval of the construction of the water and sewer lines at the Paradise Mills project. Further, this Court has determined that the actions of Treister as the architect for the Paradise Mills project are covered under the terms of the professional liability policy issued to

him by Evanston. The Court, therefore, will issue a declaratory judgment that Evanston is liable under the insurance policy to pay on behalf of Treister the judgment arising from the settlement between Treister and the Government.

The Court now makes the following findings of fact and conclusions of law.

Kenneth Treister received his architectural degree from the University of Florida in 1953 and, after four years in the Navy, engaged in the private practice of architecture in Florida. In 1969, Treister and his brother, Leonard Treister, joined with Alcoa Properties, Inc. ("Alcoa") to form Housing Corporation of America ("HCA"), for the purpose of developing and constructing low-cost housing projects under the federal government's "turnkey" public housing program. The stock of HCA was owned 51% by Alcoa, 24.5% by Kenneth Treister and 24.5% by Leonard Treister. HCA's principal place of business was Miami, Florida, with Leonard Treister serving as chairman of the board and Kenneth Treister serving as president and a member of the board. Kenneth Treister was also the senior architect and the head of HCA's architectural department.

One of the projects developed by HCA under the turnkey program was the Paradise Mills project, St. Croix, Virgin Islands. In the contract dated December 29, 1969, and amended on October 12, 1971, concerning the development and construction of the Paradise Mills project, Kenneth Treister is named as the architect.

Having been an architect in Florida for many years, Treister was aware that he could not perform architectural services for the Paradise Mills project unless he was licensed under the laws of the Virgin Islands to practice architecture in the Virgin Islands. Treister, therefore, wrote a letter dated June 22, 1970, to the Virgin Islands Board for Architects, Engineers and Land Surveyors requesting a temporary license to practice architecture in connection with two projects described as "approximately 200 units to be constructed on the island of St. Croix for the Virgin Islands Housing Authority," and "208 units to be construct-

ed on the island of St. Croix for the Department of Housing and Community Renewal, Virgin Islands Government." Treister also stated that he already held Permit No. T–07 issued in 1969 for which he would seek renewal.

The project described as "208 units" is the Paradise Mills project.

Although Treister's letter of June 22, 1970, was written on stationery which bears the logo of "Treister and Acosta/ Architects," Treister in his deposition of October 29, 1987, explained that "Treister and Acosta/ Architects" was not an architectural firm independent of HCA. Hernando Acosta was an employee of HCA who worked under Treister's supervision in HCA's architectural department.

Title 27 of the Virgin Islands Code Ann. § 283(a) provides that a temporary Virgin Islands license may be issued to an architect registered in another state or territory. Title 27 V.I.Code Ann. § 282(c) defines the practice of architecture as

the professional service of an architect, ..., and shall be any service or creative work, the adequate performance of which requires architectural education, training, and experience in analysis, logical planning, and designing of essential elements of buildings and their environments and providing space for human use, *and supervision or inspection of construction for the purpose of assuring compliance with the design.*

V.I.Code Ann. tit. 27 § 282(c) (emphasis added).

The Board of Architects, Engineers and Land Surveyors granted Temporary Permit No. T–64 to Treister for the performance of architectural services on, specifically, the two projects described in Treister's letter of June 22, 1970. As stated heretofore, the project described as "208 units" is the Paradise Mills project.

Thus, having been a licensed, professional architect in Florida for many years; having applied for a temporary license to practice architecture in the Virgin Islands; having been granted a temporary license to practice architecture, specifically, for the

Paradise Mills project; and having held himself out to the Government of the Virgin Islands as the architect for the Paradise Mills project, Treister was aware, or should have been, of the statutes that govern the practice of architecture in the Virgin Islands. In the Virgin Islands, the practice of architecture includes, by statute, the "supervision or inspection of construction for the purpose of assuring compliance with the design." *Id.* The Government of the Virgin Islands, in its "Declaration of Policy" at V.I.Code Ann. tit. 27 § 281, states that an architect practicing in the Virgin Islands must be licensed in order to "safeguard life, health, and property and to promote the public welfare, . . . ."

Plans submitted to the Virgin Islands Department of Public Works for the project bear the logo "Treister and Acosta/Architects." As heretofore pointed out, "Treister and Acosta/Architects" was not an architectural firm independent from HCA, and Acosta was an employee of HCA who worked under Treister's supervision. In a contract dated February 7, 1972, entered into with Rexach Construction Company ("Rexach") for the construction work on the Paradise Mills project, the "architect" is named as "Kenneth Treister and Hernando Acosta." The building permit issued on June 23, 1972, by the Public Works Department for the construction of the Paradise Mills project states that the "designer" is "Kenneth Treister & Hernando Acosto (sic)."

The conclusion is unavoidable that Kenneth Treister held himself out as the architect of record and that he was, in fact, the architect for the Paradise Mills project.

The construction of the Paradise Mills project took place during 1972 and 1973. As stated heretofore, the plans for the project bear the logo of "Treister and Acosta/ Architects." These plans show that the water lines were to be installed on one side of the buildings and the sewer lines were to be installed on the other side of the buildings. Apparently because rock was encountered, which would have made it costly to excavate. separate trenches, the plans were amended, resulting in the installation of the water and sewer lines in the same trench. Such installation is permissible under the Rules and Regulations promulgated for the enforcement of Title 19, Health and Sanitation, of the Virgin Islands Code, provided:

> Wherever possible water service and house sewer pipes should be laid in separate trenches. Where they must be laid in the same trench, the water pipe shall be laid on a bench or on solidly tamped backfill at least 12 inches above the top of the sewer pipe.

V.I.R. & Regs. tit. 19 § 1522–62(b).

As constructed, the water and sewer lines were placed in the same trench. Following the typhoid epidemic in 1985 at the Paradise Mills project, the presence of feces was detected in the water lines. Excavation of the water and sewer lines revealed that they were not "benched" or on solidly tamped backfill. Instead, some of the lines were placed next to each other and most of the lines were installed so that the water lines lay under the sewer lines. Some of the water and sewer lines were placed so close that they touched. This manner of installation allegedly allowed cross-contamination. The installation was in flagrant violation of Virgin Islands law.

In his depositions and affidavits, Treister asserted that he was not responsible for the change in the plans that put the water and sewer lines in the same trench, nor was he responsible for the negligent approval of their installation in the same trench without being "benched" or on solidly tamped backfill as required by Virgin Islands law, because this had been done after December 31, 1972.

■ On December 31, 1972, as of 5:00 P.M. Eastern Standard Time, Treister's relationship with HCA had changed. On that date, Treister, Alcoa Properties, Inc. and HCA entered into a "Tail-end Agreement" under which Treister resigned as president and member of the board of HCA, and Treister's stock in HCA was redeemed by Alcoa Properties, Inc. for an estimated $225,000.00.

Treister's services to HCA as architect, however, did not end on December 31, 1972. The Tail-end Agreement provides:

*Section 2.1.* The parties recognize that certain services to be rendered by KENNETH [Treister] are essential to the proper conduct of the business of HCA. Consequently, HCA and KENNETH will, contemporaneously with the execution hereof, enter into an AGREEMENT FOR SERVICES in the form attached hereto as Exhibit 3. API [Alcoa Properties, Inc.] will guarantee to KENNETH payment of such sums of money as may be owed to him as compensation pursuant to such agreement, not to exceed, in the aggregate $75,000.

Tail-end Agreement, Section 2.1 (capitalization original).

Exhibit 3, referred to in the Tail-end Agreement, is an agreement for services entered into between HCA and Treister. This agreement for services states in part:

1. The parties agree that KENNETH shall have the continuing obligation to perform, at the request of HCA, certain architectural services necessary for successful completion of certain projects or contracts now in process by HCA and also any such services needed by HCA with respect to projects or contracts completed by HCA during the employment of KENNETH by HCA, which jobs in process and completed jobs are listed on Exhibit A attached hereto.

Exhibit A, referred to in the agreement, specifically included "Local Government— 208 Family" as a job in progress. This is the Paradise Mills project.

Under Treister's "continuing obligation," for which his payment was not to exceed $75,000.00, Treister agreed to be available in Miami as the architect for the Paradise Mills and other projects. He also agreed to execute certifications as needed on projects in progress or completed during his employment with HCA, and to perform services as necessary for the execution of those certifications. This "continuing obligation" was to take place after December 31, 1972.

In his depositions and affidavits, Treister contended that, after executing the Tail-end Agreement on December 31, 1972, he did "nothing" in connection with the Paradise Mills project and that he neither retained nor had access to any files or copies of drawings on the Paradise Mills project. This Court does not accept Treister's contention that he did not possess or have access to copies of plans necessary for the performance of obligations into which he had entered and for which he was to be well paid. Treister's contention that, after December 31, 1972, he did "nothing" on the Paradise Mills project is contrary to the evidence, and is not credible. The accounting records for expenditures on the Paradise Mills project list payments to Treister for his architectural services during 1973 as well as 1972. On these accounting records, the initials "KT" appear next to disbursements labeled "other supervision" made for "Architecture and Engineering" on the Paradise Mills project. These entries were dated as late as May 31, 1973. The Court finds that "KT" refers to Kenneth Treister.

The Court also finds significant Treister's letter of March 9, 1973, to HCA entitled "Architectural Agreement between HCA and Kenneth Treister." In this letter, quoted below in pertinent part, Treister makes the following requests in connection with his Tail-end Agreement with HCA:

in each instance where you require my signature as 'the architect of record' that you have prepared by the person at HCA who has the responsibility for that section of work, a notarized certificate containing the following:

1. A request for my signature on a particular document.

2. A statement certifying that the inspecting architects for HCA or HCA as owner have performed the architectural or administrative services called for by my signature; and that the work was performed satisfactorily; that it was performed according to plans and specifications; that it was approved by the owner and; in all respects, HCA is satisfied for that work to be approved.

In instances of approval of payments to contractor, I would appreciate it if you

would add to the certificate the exact language of the paragraph in the bank or lending company's certificate that I have to sign so that the supervising department of HCA certifies to me that the work has been done according to plans and specifications; and that the payment is due.

Also, I would like to clarify that my work, to date, is not to supervise any of the actual construction but to sign any documents as 'the architect of record' that is requested by (sic) me to sign by HCA providing, to the best of my knowledge, that the work is correct and, secondly, that I have a certificate indicating that the work is correct.

This Court finds that Treister's letter of March 9, 1973, to HCA clearly shows that Treister continued to hold himself out as the "architect of record" for the Paradise Mills project after December 31, 1972, and that he knew that his responsibilities as architect of record included certifying that the work had been done "according to plans and specifications."

Further, evidence shows that Treister did, in fact, perform his "continuing obligations." Treister's name, signature or initials appear on certifications for payment that were submitted to HCA between June 1972 and June 1973 for work completed on the Paradise Mills project. On these vouchers, Treister's name, signature or initials certify that the work described had been completed pursuant to the plans and specifications, and that payment should be made.

Many of these certifications were not signed by Treister personally but were signed "Theodore Viegelmann for Treister." Theodore Viegelmann was a supervisory employee of HCA on the Paradise Mills site. Viegelmann testified that he signed the certifications with the specific authorization of Treister, and that he conducted the inspections for Treister when Treister was in Florida.

Most if not all of the water and sewer lines were installed during February through June of 1973. This finding is based on the "monthly estimated break-downs" of Rexach, the construction company with which HCA contracted for the construction of the Paradise Mills project. The monthly estimated break-down for the period of August 1–31, 1972, shows that the installation of the water and sewer lines had not been started. The break-down for the period of February 1–28, 1973, shows that 30% of the water lines and 30% of the sewer lines had been previously installed. The break-down for the period of March 1–31, 1973, shows that 80% of the water lines and 100% of the sewer lines had been completed. The break-down for the period of April 1–30, 1973, shows that 90% of the water lines and 100% of the sewer lines had been completed. The break-down for the period of May 1–31, 1973, shows that 100% of the water lines and 100% of the sewer lines had been completed. Thus, 70% of the water lines were completed between February 1st and May 31st, and 70% of the sewer lines were completed between February 1st and April 30th. Although the break-downs for the periods of September, 1972, through January, 1973, were not made available, the Court finds on the basis of percentages of the water lines and sewer lines shown to have been installed between February 1 and May 31, 1973, that most if not all of work on both the water and sewer lines was done after December 31, 1972.

As the accounting records and the certifications for work completed on the Paradise Mills project show, Treister approved and was paid for his approval of work completed on the Paradise Mills project after December 31, 1972. As Treister's letter of March 9, 1973, shows, Treister did so while continuing to hold himself out as architect of record for the Paradise Mills project. Under Title 27 of the Virgin Islands Code, § 282(c), as quoted in full above, Treister, as the architect of record, was responsible for "the supervision or inspection of construction for the purpose of assuring compliance with the design." As Rexach's monthly estimated break-downs show, most if not all of the water and sewer lines were installed after December 31, 1972.

The Court finds that the evidence presented to the Court in this declaratory judgment action is more than ample to support a finding by a court or jury in the trial that was scheduled for September, 1988, on the Government's cross claim against Treister, that Treister, both before and after December 31, 1972, was responsible for the negligent design and negligent approval of the installation of the water and sewer lines of the Paradise Mills project, which water and sewer lines were installed in flagrant violation of Virgin Islands law.

■ Evanston contends that it has no liability to Treister under the professional liability policy it issued to him because Treister himself has asserted that he did "nothing" in connection with the Paradise Mills project after December 31, 1972, when most if not all of the water and sewer lines were negligently installed. Evanston contends that Treister cannot be found liable for acts, errors or omissions in which he did not participate. The Court, as heretofore stated, has found that Treister's assertion that he did "nothing" after December 31, 1972, is not credible and is contrary to the evidence. Treister's assertions, therefore, are not a basis on which to relieve Evanston of liability for Treister's negligent design and negligent approval of the water and sewer lines at the Paradise Mills project.

In its declaratory judgment action, Evanston further asserts that it is not liable under the professional liability policy it issued to Treister for the acts, errors and omissions of Treister as architect for the Paradise Mills project, in that three policy exclusions preclude coverage.

As hereinafter discussed, under Exclusion II, the so-called "employee exclusion," Evanston claims there is no coverage for the period during which Treister owned 24.5% of the stock of HCA, was president and member of the board of HCA, was the head of the architecture department of HCA, and was an employee of HCA. Evanston also claims that there is no coverage for Treister under Exclusion XI, the fraud exclusion, on the ground that any acts,

errors or omissions of Treister on the Paradise Mills project were the result of his perpetration of a fraud on the Government of the Virgin Islands. Finally, Evanston contends that Treister is excluded from coverage under Endorsement 5, the pollution exclusion, in that Treister. was responsible for contaminating the water supply of the Paradise Mills project. As discussed below, this Court finds no merit in Evanston's reliance on any one or all of these exclusions.

■ For the purpose of interpreting the exclusions of the insurance policy, the parties appear to be in agreement that Florida law should be applied, since the policy was executed and delivered to Treister in Florida, and in view of the fact that Treister's principal place of business at the time the policy was issued was in Florida. Whether we apply the law of Florida, the law of the Virgin Islands or the law of the Third Circuit, however, we arrive at the same result. It is settled law that if an insurance policy is susceptible of only one reasonable construction, and its terms are unambiguous, it must be construed according to its plain language. 13 J. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 7384 note 55 (1976 & Supp.1991) (citing cases) (cited hereinafter as "Appleman"). Absent circumstances indicating a contrary intention of the parties, the language of a policy is to be construed in its common, ordinary, and popular sense. *Id.* at note 56. The understanding of an ordinary person is the standard to be used in construing the insurance policy. *Id.* at note 62. The construction of the language of an insurance policy is for the court, as to what a reasonable person in the insured's position would understand the words to mean. *Id.* at § 7402 note 21. Any ambiguity in the language of an exclusion must be construed against the insurer and in favor of the insured. *Id.* at § 7402 note 14; § 7405 note 1. *See also State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla.1986); *Buntin v. Continental Ins. Co.,* 583 F.2d 1201, 1204 (3rd Cir.1978).

With these principles in mind, this Court now turns to Evanston's contention that exclusions in the professional liability policy issued to Treister preclude coverage of any liability he may have to the Government of the Virgin Islands for his negligent design and negligent approval of the construction of the water and sewer lines at the Paradise Mills project.

■ The first policy exclusion asserted by Evanston in its attempt to avoid coverage is Exclusion II, which Evanston refers to as the "employee exclusion." Listed in the section labeled in large print, "EXCLUSIONS," this exclusion states in full that the insuring agreements and all other provisions of the policy shall not apply to:

II. Liability of any kind based upon, involving or arising out of the conduct by an individual, corporation, partnership or joint venture of which the Insured is a partner, officer, member or employe, which is not designated in the declarations as a Named Insured, unless specifically endorsed hereon.

Evanston interprets this so-called "employee exclusion" as excluding from coverage all claims made in this case against Treister that arise from his professional architectural services rendered by him on the Paradise Mills project while he was an owner, president or employee of HCA.

This Court finds that the plain language of this so-called "employee exclusion" does not support Evanston's interpretation. Evanston in its tortious interpretation of this "employee exclusion" claims that it excludes coverage for Treister by riveting attention solely on the word "employee." Evanston ignores the concluding words of this exclusion, which are, "which is not designated in the declarations as a Named Insured, unless specifically endorsed hereon." These words, when used in their common, ordinary, and popular sense, state the unambiguous proposition that the exclusion does not apply to anyone or any entity which is a "Named Insured." This Court determines that it was the intention of the parties that the named insured is Kenneth Treister, the individual; and further, that this is precisely what Exclusion II states.

■ The named insured, as designated in item # 1 of the Declarations, is "Kenneth Treister dba Treister & Cantillo, Architects." This could be interpreted as naming only the business entity of "Treister & Cantillo, Architects" as the named insured. However, on the very day the policy was issued (June 19, 1986), Endorsement # 2 was added. This endorsement states in full:

## EXCLUSION OF CLAIMS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that such insurance as is afforded by this policy does not apply to any claim made by or against *Treister & Cantillo.*

Also on the same day, June 19, 1986, Endorsement # 7 was added. This endorsement states in full:

## ADDITIONAL NAMED INSURED

It is understood and agreed that the Named Insured shown in Item # 1 of the Declarations is amended to include the following: KENNETH TREISTER, A SOLE PROPRIETORSHIP

A reading of the plain language of these the declaration and the two endorsements requires the conclusion that the named insured in the Declaration was intended by the parties to be Kenneth Treister, the individual. Endorsement # 2, "Exclusion of Claims," clearly states that the policy does not apply to any claim made by or against "Treister & Cantillo/Architects." From this endorsement, this Court concludes that the policy covers claims made against Kenneth Treister, the individual. Similarly, Endorsement # 7, "Additional Named Insured," clearly adds as an additional named insured "Kenneth Treister, a sole proprietorship." From this endorsement, the Court concludes that the policy covers claims made against Kenneth Treister, the individual. This Court finds, therefore, that Kenneth Treister, the individual, is the named insured. Treister, therefore, is covered under the policy for such amounts, less the deductible, that he "shall

become legally obligated to pay as damages by reason of any act, error or omission committed or alleged to have been committed by the Insured...." He is covered for his performance of architectural services for the Paradise Mills project whether he is termed an "employee," an "agent," the head of the architecture department for HCA, the president of HCA— or in any other capacity.

The Court finds that the language of Exclusion II, the so-called "employee exclusion," is unambiguous and thus, as a matter of law, finds that Exclusion II does not exclude from coverage Treister's acts, errors and omissions while an architect licensed in the Virgin Islands to perform architectural services for the Paradise Mills project. In the event, however, that the language of the so-called "employee exclusion" may not be as clear to others as it is to this Court, then this exclusion must be interpreted against Evanston, in accordance with settled law. Appleman at § 7402 note 14; § 7405 note 1. If there is more than one reasonable reading of a policy provision, that provision must be construed so as to permit coverage, rather than to deny coverage. *Id.* at § 7401 note 9. This Court concludes, therefore, that whether the wording of the so-called "employee exclusion" is considered ambiguous or unambiguous, Kenneth Treister, being the named insured, is covered under the policy for the claims made against him in the cross claim of the Government of the Virgin Islands for his negligent design and negligent approval of the installation of the water and sewer lines at the Paradise Mills project.

This Court notes that even if the so-called "employee exclusion" had been interpreted to exclude liability for Treister's acts while an employee of HCA, still, this would not exclude most if not all of acts for which Treister must be found liable under the Virgin Island law, arising from his failure of "supervision or inspection of construction for the purpose of assuring compliance with the design." V.I.Code Ann. tit. 27 § 282(c). As the Court has heretofore found, most if not all of the water and sewer lines were installed in violation of Virgin Islands law during February through June of 1973, after Treister executed his Tail-end Agreement on December 31, 1972.

■ Evanston contends that a second policy exclusion, Exclusion XI, the "fraud exclusion," excludes the claims made against Treister by the Government of the Virgin Islands on the ground that Treister's architectural conduct in connection with the Paradise Mills project was fraudulent. Exclusion XI states in full that the insuring agreement and all other provisions of the policy shall not apply to:

XI. Any loss caused intentionally by or at the direction of the Insured; or any dishonest, fraudulent, criminal, malicious and knowingly wrongful acts, errors or omissions committed by, or at the direction of the Insured.

This Court has not been presented with any evidence which could be used as a basis for attributing to Treister any fraudulent or criminal conduct. The Court finds, therefore, that this exclusion is not applicable.

■ The third exclusion which Evanston contends precludes coverage for Treister on the Government's cross claim is Endorsement # 5, the pollution exclusion. Added on the same date, June 19, 1986, that the policy was issued, Endorsement # 5 states in full:

## POLLUTION EXCLUSION ENDORSEMENT

It is hereby understood and agreed that such insurance as is afforded by this policy does not apply to any claim based upon, arising out of or in any way involving the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants.

Evanston contends that since the negligence claim against Treister arose from the alleged pollution of the water lines, the pollution exclusion precludes the claim.

As stated heretofore, Evanston's declaratory judgment action has its roots in the class action that was brought by the residents of the Paradise Mills after they contracted typhoid. In that class action, it was alleged that the typhoid epidemic was caused by cross-contamination of the water and sewer lines which resulted from the negligent installation of the water and sewer lines, in that they were not benched or on solidly tamped backfill as required by Virgin Islands law. In that class action, a summary judgment was entered in favor of Treister.

In its cross claim, however, the Virgin Islands Government is not seeking damages arising from the typhoid epidemic, or from the cross-contamination of the water and sewer lines. Rather, the Government's cross claim, and the settlement it reached with Treister, is based on Treister's failure to carry out his responsibilities as the architect of record for the Paradise Mills project. It is based on Treister's acts, errors and omissions as architect for his negligent design and his negligent approval of the construction of the water and sewer lines, in violation of Virgin Islands law. The Government seeks damages, not as the result of pollution, but as a result of the unusable condition of the water and sewer lines at the Paradise Mills project.

The Government's cross claim is not based on "the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants." The Government's cross claim alleges damages to which the pollution exclusion does not apply. Evanston's contention that the pollution exclusion precludes the Government's cross claim against Treister is totally without merit.

Finally, Evanston contends that it is not liable under the policy because Treister's settlement agreement with the Government of the Virgin Islands was made in bad faith and in collusion with the Government. Evanston also contends that the settlement was in violation of the terms of the insurance policy.

■ In contending that the settlement between Treister and the Government was made in bad faith, Evanston asserts that Treister made no attempt to minimize his liability, which it says was minimal when compared to other defendants who settled with the Government for substantially smaller sums. This Court has determined, as heretofore discussed at length, that there was ample evidence on which a court or a jury could have found that Treister was liable for his negligent design and negligent approval of the construction of its water and sewer lines. The Court now adds that the evidence would amply support a finding by the court or jury that Treister's negligence was in no way minimal. The court or jury justifiably could have returned a verdict against Treister for as much as $1.4 million.

■ Further, Evanston chose to select counsel for Treister, but its defense of Treister was under a reservation of rights letter by which it maintained that there was no coverage under the policy for the Government's cross claim. As the Third Circuit has stated, an insurance company has the right to provide defense counsel for its insured under a reservation of rights letter without prejudice to its asserted position of non-liability. *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 871 (3rd Cir.1987). In *Cay Divers*, the Third Circuit stated that the insurance company, having taken such a course of action, had

> renounced control of the litigation and thereby thrust the responsibility for the litigation wholly upon the insured and its counsel. [Insured] had to proceed as best it could with its own defense, although assisted and advised by counsel. [Insurer] cannot now complain that [insured] breached its obligations under ... the policy by proceeding to settlement, especially when it has done nothing to compromise [insurer's] reserved right to contest coverage.

*Cay Divers*, 812 F.2d at 870.

■ Likewise, under the circumstances of this case, Evanston cannot now complain that Treister entered into a settlement rather than face a trial where he faced a

potential personal liability of $1.4 million. By selecting counsel under a reservation of rights, Evanston had renounced control of the litigation and thereby had thrust the responsibility for the litigation wholly upon Treister.

 Evanston, nevertheless, contends that Treister entered into the settlement in bad faith. Evanston chose not to participate in the settlement negotiations, maintaining that there was no coverage. Evanston, however, was kept advised of the progress and status of the negotiations. With the trial on the Government's cross claim scheduled to begin in September, 1988, Evanston, on August 3, 1988, served but did not file its complaint for declaratory judgment on all counsel participating in the settlement negotiations, still maintaining there was no coverage under the policy. Treister notified Evanston that he intended to enter into a settlement with the Government unless, by August 15, 1988, Evanston agreed to extend coverage without reservation. Evanston refused to extend coverage, and filed its complaint for a declaratory judgment with the court on August 26, 1988, on the eve of trial. The settlement agreement between Treister and the Government was filed on September 8, 1988, in which it was agreed that a judgment would be entered against Treister in favor of the Government in the amount of one million dollars, with the understanding that Treister's liability under the settlement agreement and judgment is limited to the extent of Evanston's liability to Treister under the insurance policy. Under the circumstances, there is no question that Treister did not engage in bad faith when he entered into the settlement.

As the Second Circuit has stated, an insured is not required to establish his actual liability in order to recover the amount of the settlement from an insurance company "so long as ... a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of the possible recovery and degree of probability of claimant's success against the [insured]." *Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir.), *cert. denied*, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963). This Court has determined that there was ample evidence on which a court or jury could have found that Treister was the architect of record and was, in fact, the architect for the Paradise Mills project, and that Treister was liable for the negligent design and negligent approval of the construction of the water and sewer lines at the Paradise Mills project. On the facts known to Treister at the time of settlement, therefore, this Court determines that it was reasonable for Treister to conclude that potential liability existed, and that the degree of probability of success by the Government was great. In the event that the case went to trial, Treister could, in good conscience, expect that a verdict in the amount of $1.4 million might be rendered against him. In view of a possible recovery of $1.4 million, the Court determines that the settlement was reasonable.

 Evanston nevertheless contends that the amount of the settlement, one million dollars, is evidence of Treister's collusion with the Government, since Treister personally will pay nothing, his personal liability having been limited to whatever amount the Court determines is due and owing by Evanston under the policy. The Court, having determined that the amount of the settlement was reasonable in light of a potential recovery of $1.4 million, finds Evanston's contention of collusion based on a settlement within policy limits to be without merit.

 Finally, Evanston contends that it is not liable to Treister under the settlement because the settlement was made in violation of the terms of the insurance policy. As the Third Circuit stated in *Cay Divers*, 812 F.2d at 870, when an insurance company has declined coverage, it "cannot now complain that [insured] breached its obligations under ... the policy by proceeding to settlement, especially when it has done nothing to compromise [insurer's] reserved right to contest coverage." Evanston had declined coverage. Treister, under the circumstances of this case, had the right to enter into a reasonable settlement

with the Government, and to recover, within policy limits, the amount of that settlement from Evanston. Treister did not compromise Evanston's reserved right to contest coverage by his settlement with the Government, as is evidenced by this declaratory judgment action.

Further, Evanston has directed this Court's attention to no provision in the policy, and this Court has found none, which would prohibit the settlement entered into by Treister under the circumstances of this case. The policy contains a clause concerning the insured's duty to cooperate with the insurance company, but this clause in no way supports Evanston's position that Treister was required under the terms of the policy to obtain Evanston's consent before entering into the settlement under the circumstances of this case. That clause, included in Endorsement # 1 of the policy and dated June 19, 1986, the same date on which the policy was issued, states in pertinent part:

V. Defense, Settlement, Cooperation, Supplementary Payments.

\* \* \* \* \* \*

(b) The Company shall not settle any claim without the consent of the Insured. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the claim or continue any legal proceedings in connection with such claim, then the Company's liability for the claim shall not exceed the amount for which the claim could have been so settled. . . .

Although this clause clearly specifies Evanston's rights in the event an insured refuses to consent to a settlement, there is absolutely nothing in this clause which prohibits Treister from entering into a settlement.

Finding nothing in the plain language of the insurance policy which prohibits Treister from entering into a settlement with the Government without the consent of Evanston, this Court determines that Evanston's contention that Treister entered into the settlement in violation of the terms of the insurance policy is without merit. In the alternative, this Court determines that,

by reserving the right to contest coverage, Evanston renounced control of the litigation and thereby thrust the responsibility for the litigation wholly upon Treister. Evanston cannot now complain that Treister breached its obligations under the insurance policy by proceeding to settlement, especially where Evanston has maintained to this day that Treister was excluded from coverage and that there was no evidence indicating that he was liable to the Government. Evanston, having made its choice by submitting the issue of its liability to the Court in this declaratory judgment action will now be bound by the result.

Therefore, summarizing, the Court finds on the basis of ample evidence submitted in this declaratory judgment action that Treister, an architect, was covered under professional liability policy No. EE 102941 issued to him by Evanston Insurance Company for the claims made against him by the Government of the Virgin Islands in its cross claim for damages arising from his negligent design and negligent approval of the construction of the water and sewer lines at the Paradise Mills project. The Court has also determined that the settlement entered into between Treister and the Government on the Government's cross claim was a reasonable settlement, and that Treister did not enter into this settlement in bad faith as to Evanston, nor in collusion with the Government. The Court has further determined that the exclusions claimed by Evanston are not applicable to Treister under the facts in this case. Evanston is therefore liable to indemnify Kenneth Treister under its policy number EE 102941 to pay on behalf of Treister the amount of the stipulated judgment against Kenneth Treister in favor of the Government of $1,000,000.00 less the deductible of $5,000.00, plus interest on the balance of $995,000.00 at 9% as provided by Virgin Islands law, from the date on which the judgment against Treister was filed with the court, which date was September 28, 1988, to the date of this Court's Order, which will be May 20, 1992. A declaratory judgement will be so entered.

## ORDER

AND NOW, this 20th day of May, 1992; Evanston Insurance Company having brought a declaratory judgment diversity action in connection with its policy numbered EE 102941 entitled "Architects and Engineers Professional Liability Policy" which it issued to Kenneth Treister in the face amount of one million dollars, for determination of Evanston's liability to indemnify Kenneth Treister for the amount of the settlement agreement and stipulated judgment entered between Kenneth Treister and the Government of the Virgin Islands in settlement for the damages to the Government of the Virgin Islands arising from Treister's negligent design and negligent approval of the water and sewer lines at the Paradise Mills project, St. Croix, Virgin Islands; for the reasons set forth in this Court's Memorandum of May 20, 1992;

IT IS ORDERED AND DECLARED: Kenneth Treister is the named insured in the policy issued by Evanston Insurance Company numbered EE 102941 entitled "Architects and Engineers Professional Liability Policy;" none of the exclusions set forth in the policy are applicable to the acts, errors or omissions of Kenneth Treister in connection with the cross claim brought against him by the Government of the Virgin Islands; the settlement he entered into with the Government of the Virgin Islands was reasonable and in good faith; judgment, for the purpose of indemnifying Kenneth Treister for the settlement, is entered in favor of the defendants Kenneth Treister and the Government of the Virgin Islands and against plaintiff Evanston Insurance Company in the face amount of the policy EE 102941 of one million dollars ($1,000,000.00) less the deductible of five thousand dollars ($5,000.00) plus interest on the balance of nine hundred ninety-five thousand dollars ($995,000.00) at 9% as allowed by Virgin Islands law from September 28, 1988, to the date of this Judgment Order, said interest being three hundred twenty-six thousand three hundred four dollars and ninety cents ($326,304.90), for a total judgment of one million three hundred twenty-one thousand three hundred four dollars and ninety cents ($1,321,304.90).