[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  13-10631

_____

D.C. Docket No. 1:11-cv-24292-UU

JAMES RIVER INSURANCE
COMPANY, a foreign corporation,

Plaintiff-Appellee,

versus

HUFSEY-NICOLAIDES-GARCIA-SUAREZ
ASSOCIATES, INC.,
a Florida corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 10, 2014)

Before ANDERSON, Circuit Judge, and MOODY* and SCHLESINGER,**
District Judges.


PER CURIAM:

_____

*Honorable James S. Moody, Jr., United States District Judge for the Middle District of Florida,
sitting by designation.

**Honorable Harvey E. Schlesinger, Senior United States District Judge for the Middle District of
Florida, sitting by designation.

This is a declaratory judgment action brought by James River Insurance Company ("Company") against its insured, Hufsey-Nicolaides-Garcia-Suarez ("HNGS"), seeking declaratory judgment that the Company has no duty to defend or to indemnify HNGS in the underlying litigation.[1]  The underlying litigation is fully described in the district court's opinion, and need be only summarized here.

A cruise ship passenger, who stayed at the Epic Hotel and Residences (the "Hotel), contracted Legionnaire's disease.  The cruise line approached the Health Department, claiming that the cruise line's tests indicated the presence of legionella bacteria in the Hotel's water.  The Health Department tested the chlorine levels in the water and discovered that a water filter was installed to remove chlorine.  Two days later, the Health Department issued its Health Advisory, noting, in relevant part, that: "Disinfectant residual (Chlorine) readings from water samples collected from the Epic Hotel and Residences [sic] plumbing water system indicate that the levels are insufficient to protect the plumbing water system from potential water-borne illnesses" and stating that, as a precautionary measure, guests and residents should not "use this water."  The Health Advisory

---

[1] The subject policy covered HNGS for a "Wrongful Act" in the performance of "Professional Services."

2

noted that three cases of Legionnaire's disease might be linked to the Hotel. Subsequently, the Hotel was forced to close while it repaired the filtration system.

The Hotel sued the Hotel's developers claiming damages for economic losses arising from the costs of remediating the plumbing and filtration systems, closing for the repairs, and loss of good will. The Hotel's complaint alleges, in relevant part: "Because the water at the Epic Hotel did not have appropriate chlorine levels, the water at the Property could not be used for its intended uses." Shortly after the Hotel filed suit, the developers filed a third-party complaint against the design professionals, including HNGS, the mechanical engineer responsible for the design and installation of the Hotel's plumbing and filtration systems. The third-party complaint incorporated all of the allegations made by the Hotel against the developers.

The third-party complaint alleges that the water filtration system reduced the level of chlorine in the water delivered to the Hotel's patrons to an unsafe level. The indemnification and contribution claims against HNGS allege that HNGS failed to properly design the Hotel's plumbing and filtration systems, and therefore, that it is liable if the developers are held responsible for the damages the Hotel seeks in its complaint.

The Company's declaratory judgment action against HNGS alleges that the

3

Company has no duty to indemnify or defend HNGS in the underlying litigation because all of the claims alleged in the underlying litigation directly or indirectly arise from the presence of legionella bacteria in the water, and thus, policy exclusions apply to bar coverage.

The parties filed cross motions for summary judgment. The district court granted the Company's motion for summary judgment, holding that the subject policy's pollution exclusion applied and the Company therefore had no duty to defend or indemnify HNGS in the underlying litigation.

The pollution exclusion waives coverage for any claim "[b]ased on or directly or indirectly arising out of or resulting from or caused or contributed to by pollution/environmental impairment/contamination . . ." The pollution exclusion further bars coverage for "[a]ll liability and expense arising out of or related to any form of pollution . . ." The term "pollution" applies to "any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant." The exclusion also provides that: "This exclusion applies regardless of whether an alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or, 'Wrongful Act.'"

Although not relied upon by the district court, the Company argues that the policy's bacteria exclusion also bars coverage. This exclusion states as follows:

4

## FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY

This policy does not apply to any "Claim" against the "Insured" based on or directly or indirectly arising out of any actual or alleged "Wrongful Acts" or "Related Wrongful Acts" in any way connected with:

1.    the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or,

2.    any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or,

3.    request, demand, order by or on behalf of a governmental authority for testing, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens,

5

infections agents, wet or dry rot or rust or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any "Claim" to which this endorsement applies.

The sole issue on appeal is whether any of the underlying claims are covered by the insurance policy issued by the Company to HNGS, or whether one of the exclusions in the policy operates to bar coverage. We conclude that the district court erred because, regardless of whether the exclusions in the policy operate to bar *some* coverage, a portion of the allegations and damages claimed against HNGS in the underlying action fall outside the exclusions because they are entirely unrelated to the presence of legionella bacteria.

We review a district court's grant of summary judgment *de novo,* viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *See Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Under Florida law, "[i]t is well settled that an insurer's duty to defend its

6

insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Florida Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435, 442-43 (Fla. 2005).[2]  Accordingly, courts determine the presence of an insurer's duty to defend based solely on the complaint's allegations, resolving all doubts in the insured's favor.  *See id.* at 443.  Florida law is clear that the duty to defend is both distinct from and broader than the duty to indemnify, meaning that insurers must defend the insured even if the underlying allegations are inconsistent with the actual facts or completely without merit.  *See id.*  Importantly, the duty to defend extends to all claims, even to those claims that are clearly outside the scope of coverage.  *See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985) (noting that "if the complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit.").

After examining the allegations of the underlying litigation, we conclude that some of the claims against HNGS do not arise out of the presence of legionella bacteria.  As stated above, HNGS was responsible for the design and

---

[2] Some of the allegations of the Second Amended Complaint and the Third Amended Third Party Complaint refer to an outbreak of legionella bacteria to which *Ground Down*, *see infra*, may apply, but we express no opinion on this issue.

7

installation of the Hotel's plumbing and filtration systems.  The Health

Department Advisory concluded that the chlorine levels in the Hotel's water were

insufficient to protect the plumbing water system from potential water-borne

illnesses.  The claims against HNGS allege, in relevant part, that HNGS failed to

properly design the Hotel's plumbing and filtration systems, and therefore, that it

is liable if the developers are held responsible for the damages the Hotel seeks in

its complaint.  The Hotel's damages include damages related to "remediation"

efforts of the allegedly improperly designed plumbing and filtration systems.

These allegations, which do not relate to the presence of legionella bacteria, are

sufficient to trigger the Company's duty to defend, which extends to all claims,

even those that are not within the scope of coverage.

To emphasize this point, we now turn to *James River Ins. Co. v. Ground

Down Engineering*, 540 F.3d 1270, 1275 (11th Cir. 2008), a case that both parties

discuss in large part in their briefs.  In *Ground Down*, we held that the subject

policy's pollution exclusion applied to the underlying litigation and the insurance

company, therefore, did not have a duty to defend.  The relevant facts are as

follows.  Ground Down was hired to conduct a "Phase I Site Assessment" of real

property to aide a buyer in its purchasing decision.  *See id.* at 1272.  The purpose

of the assessment was, in part, to identify "Recognized Environmental Conditions"

8

which referred to "the presence or likely presence of any Hazardous Substances or Petroleum Products on a property under conditions that indicate an existing release, a past release, or a material threat of a release of any Hazardous Substances or Petroleum Products." *Id.* Ground Down's assessment concluded that it did not find any environmental conditions. *See id.* Subsequently, the prospective buyer purchased the property. *See id.*

The buyer began developing the property and found significant debris that caused an elevation of the level of methane gas, requiring expensive environmental remediation. *See id.* at 1272-73. Ground Down filed a claim with James River, its insurance company, requesting James River to defend the suit with the buyer under Ground Down's professional liability insurance policy. *See id*. at 1273. The subject policy included a "pollution exclusion." *See id.* The district court determined that the buyer's claim against Ground Down fell outside the pollution exclusion because the claim related to Ground Down's failure to carry out professional responsibilities, not out of pollution. *See id.*

We reversed the district court because the damages the buyer sought against Ground Down "directly related to the contamination of the property and the resulting environmental remediation." *Id.* at 1276. That is, the damages sought directly related to the pollution clean up.

9

In coming to our conclusion in *Ground Down* that the damages directly related to the pollution exclusion, we discussed *Evanston v. Treister*, a district court case from the U.S. Virgin Islands. 794 F. Supp. 560 (D.Vi. 1992). The facts of *Evanston* are more closely aligned with the facts alleged in the underlying litigation against HNGS.

In *Evanston*, the district court concluded that the pollution exclusion did not apply and the insurance company had a duty to defend in the underlying litigation. *See id.* at 571-72. As we stated in *Ground Down*, the facts in *Evanston* "illustrate[] what it means to have a claim truly separated from the pollution involved." 540 F.3d at 1276. We summarized the *Evanston* case as follows:

> In *Evanston*, the insured was an architect who designed and supervised the construction of sewer and water pipes. *Id.* at 563. The pipes were improperly placed together rather than separated and the water line was incorrectly placed below the sewer line. *Id.* at 566. These errors led to contamination of sewage into the water supply and caused a typhoid outbreak. *Id.* at 563. The residents who became sick sued the government, and the government filed a cross-claim against the architect. *Id.* The suit against the architect was not, however, a suit for damages relating to the contamination. *Id.* Instead, the suit sought recovery for the cost to replace the water and sewer lines, *i.e.,* to redo the work that the architect had been hired to do and had done negligently. *Id.* Based on this distinction, the court found that the claim against the architect sought damages "not as a result of the pollution, but as a result of the unusable condition of the water and sewer lines." *Id.* at 572. Therefore, the pollution exclusion did not apply because the underlying

10

> complaint "allege[d] damages to which the pollution exclusion does not apply." In contrast, the damages in this case are directly related to the contamination of the property and the resulting environmental remediation.

*Id.*

Like the architect's alleged professional negligence in *Evanston* that resulted in unusable conditions of the water and sewer lines, HNGS's purported negligent design of the Hotel's plumbing and filtration systems led to the Hotel's water having insufficient chlorine levels. Similar to the damages in *Evanston*, the remediation damages against HNGS relate at least in part to the remediation that requires repairs to the plumbing and filtration systems, not to the presence of pollution or bacteria in the water.

Accordingly, the district court committed reversible error when it concluded that the Company did not have a duty to defend. It naturally follows that the district court also erred by concluding that the Company did not have a duty to indemnify, at least in part.

This case is VACATED and REMANDED for further proceedings consistent with this opinion.[3]

---

[3] We note that our decision places both the insurer and the insured in the position of having to apportion the damages appropriately, depending on whether they relate to remediation efforts related to repairs to the plumbing and filtration systems or to the presence of and exposure to bacteria. We are constrained to apply Florida law on this issue. And Florida law is clear that the duty to defend is broadly applied, with all doubts construed in favor of the insured, and that

11

VACATED AND REMANDED.

---

an insurer must defend the insured on all claims, regardless of whether some of them are barred by one or more of the policy's exclusions.