[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13207

_____

D. C. Docket No. 06-01690-CV-T-17MAP

JAMES RIVER INSURANCE COMPANY,
a foreign corporation,

Plaintiff-Appellant,

versus

GROUND DOWN ENGINEERING, INC.,
a Florida Corporation,
LAUREL A. HALL, individually,
PRIORITY DEVELOPMENT, L.P.,
a foreign limited partnership,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 20, 2008)

Before EDMONDSON, Chief Judge, PRYOR and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

James River Insurance Company appeals the district court's dismissal of its claim seeking a declaratory judgment that it is not obligated to provide a legal defense to Ground Down Engineering under the insurance policy Ground Down purchased from James River. James River also appeals the denial of its summary judgment motion. James River argues that the "pollution exclusion" in the policy excuses it from the obligation to defend Ground Down and Ground Down's engineer, Laurel Hall, in a suit filed by Priority Development for negligently failing to discover construction debris and fuel tanks during an environmental site assessment. For the following reasons, we conclude that the district court erred in holding that the pollution exclusion does not apply. We, therefore, vacate the district court's dismissal and remand with instructions for the district court to enter an order granting summary judgment to James River.

## BACKGROUND

Priority Development's predecessor in interest hired Ground Down to conduct a "Phase I Site Assessment" of real property it was considering purchasing. According to the report generated by Ground Down's engineer, the purpose of this assessment was to satisfy one of the requirements for Priority to qualify for the "innocent landowner defense" under the Comprehensive

Environmental Response, Compensation, and Liability Act (known as CERCLA or Superfund). The assessment report stated that it was also intended to identify "Recognized Environmental Conditions" which referred to "the presence or likely presence of any Hazardous Substances or Petroleum Products on a property under conditions that indicate an existing release, a past release, or a material threat of a release of any Hazardous Substances or Petroleum Products."

Ground Down completed its assessment and reported that no recognized environmental conditions had been found. Priority then purchased the property. After Priority began developing the site, it found "a significant amount of construction debris," several 55-gallon drums, and half of an underground storage tank. Priority filed suit against Ground Down and Laurel Hall for breach of contract, negligent misrepresentation, and negligence for failing to properly complete the Phase I Site Assessment. In its complaint, Priority alleged that testing revealed the drums and the underground storage tank previously contained petroleum, and that Priority, therefore, had to remove the drums and the surrounding soil and dispose of them at a special waste facility. Priority also alleged that the construction debris caused an elevation in the level of methane gas on the property which also required expensive environmental remediation.

Ground Down submitted a claim to its insurance company, James River,

requesting provision of a legal defense in the suit with Priority and payment of any resulting damages under its professional liability insurance policy. James River began providing a defense under a reservation of rights but also filed suit in federal court seeking a declaratory judgment that it was not required to provide coverage owing to the "pollution exclusion" contained in the policy.

The policy provides coverage for wrongful acts in Ground Down's performance of or failure to perform professional services. The covered "professional services" are services that Ground Down is qualified to perform in its "capacity as an architect, engineer, landscape architect, land surveyor or planner."

The policy includes a "pollution exclusion" provision excluding from coverage "[a]ll liability and expense arising out of or related to any form of pollution, whether intentional or otherwise." The pollution exclusion states that the policy does not cover "any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" This includes

> Any loss, cost, expense, fines and/or penalties arising out of any
> (1) request, demand, order, governmental authority or directive or that
> any private party or citizen action that any insured, or others, test for,
> monitor, clean up, remove, contain, treat, detoxify or neutralize or in
> any way respond to, or assess same, the effects of pollutants,
> environmental impairments, contaminants, or (2) any litigation or
> administrative procedure in which any insured or others may be
> involved as a party as a result of actual alleged or threatened

4

discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

Pollutants are defined as "any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or 'waste.' 'Waste' includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed."

The policy states that this exclusion applies "regardless of whether . . . an alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or, wrongful act."

The district court determined that the claim by Priority fell outside of the pollution exclusion, because Priority's claim arose out of the failure to carry out professional responsibilities, not out of pollution. The court also held that it would be "unconscionable at best" to interpret the policy as excluding from coverage claims relating to "any form of pollution, regardless of causation." Because Ground Down had not caused the pollution, the district court found that the exclusion should not apply. The district court thus concluded that James River was obligated to provide a defense for Ground Down, and dismissed its complaint. The

5

court then denied James River's motion for summary judgment as moot.

## STANDARD OF REVIEW

We review an order granting a motion to dismiss de novo, taking as true the facts alleged in the complaint. Doe v. Pryor, 344 F.3d 1282, 1284 (11th Cir. 2003). To survive dismissal, "the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed." See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard).

The interpretation of provisions in an insurance contract is a question of law reviewed de novo. Technical Coating Applicators, Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).

We review de novo a district court's denial of summary judgment. Huff v. DeKalb County, Ga., 516 F.3d 1273, 1277 (11th Cir. 2008). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

James River argues that Priority's claims against Ground Down for the

alleged failure to discover petroleum holding tanks and construction debris during the site assessment are claims "arising out of pollution" covered by the pollution exclusion. James River contends that Priority's request for compensation due to environmental remediation and delay due to contamination establishes that Priority's lawsuit "arises out of pollution."

Appellees, Ground Down and Priority, argue that there is no connection between the service performed negligently by Ground Down and the pollution found on the property. Appellees argue that the negligence at issue in the claim relates to improper performance of the environmental site assessment rather than negligently causing pollution. They assert that Ground Down's liability to Priority, therefore, depends on negligence in the duty to conduct the assessment rather than on the existence of pollutants. Appellees also argue that the construction debris at issue is not a pollutant within the meaning of the policy exclusion.

*Does Priority's Claim "Arise Out Of" Pollution?*

In interpreting insurance contracts, the Florida Supreme Court[1] has made clear that "the language of the policy is the most important factor." Taurus Holdings, Inc. v. United States Fid. and Guar. Co., 913 So.2d 528, 537 (Fla. 2005). "Under Florida law, insurance contracts are construed according to their plain

---

[1] In this diversity action initiated in Florida, we apply the substantive law of the forum state. See Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991).

meaning." Taurus, 913 So.2d at 532. Ambiguities in policy language "are construed against the insurer" in favor of coverage. Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1140 (Fla. 1998). A contract provision is considered ambiguous if the "relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limited coverage." Taurus, 913 So.2d at 532 (alterations and citations omitted). However, "to allow for such a construction the provision must actually be ambiguous . . . [and] courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Id. (citations omitted).

The Florida Supreme Court held that the phrase "arising out of" is not ambiguous and should be interpreted broadly. Id. at 539. The court declared that "the term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" Id. To have arisen out of something, there must be "some causal connection, or relationship" that is "more than a mere coincidence" but proximate cause is not required. Id. "[T]he phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'" Garcia v. Federal Ins. Co., 969 So.2d 288, 293 (Fla. 2007).

8

Questions of whether a clear "pollution exclusion" applies to a certain set of facts do not signify an ambiguity under Florida law. Deni, 711 So.2d at 1140. In Deni, the Florida Supreme Court rejected the idea that a "latent ambiguity" exists because the parties disagreed as to whether the pollution exclusions at issue barred coverage for (1) an accident that occurred while moving equipment which resulted in spilled ammonia or (2) an accidental spraying of two men with chemical insecticide. Id. at 1138-40.

"The duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured." Nova Casualty Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006). To determine whether the claims brought by Priority arose out of pollution such that they are covered by the pollution exclusion, we therefore look to the allegations in Priority's complaint against Ground Down in the underlying litigation.

A thorough reading of the policy in this case shows the intended breadth of the exclusion and reveals that the exclusion covers the claim brought by Priority. Assuming for a moment that all materials found by Priority are in fact pollutants, the claim clearly arises out of pollution. The exclusion states that the insurance does not apply to any "damages, claim, or suit" arising out of pollution including damages for devaluation of property and requests that any insured or others

9

"monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to . . . the effects of pollutants, environmental impairments, contaminants."

Priority's complaint requests compensation from Ground Down as a result of lost profits, lost property value, and the need for environmental remediation. The complaint lists this injury under the heading "environmental contamination" and states that, as a result of Ground Down's negligence, Priority "engaged several environmental engineering companies to test, monitor and remediate the environmental conditions." Priority also stated that the drums previously contained petroleum which had leaked into the soil, thus requiring it to "(i) expend large financial sums to remove the Drums and the surrounding soils, both of which had to be disposed of at a special waste facility; and (ii) monitor the groundwater [for contamination]." Regarding the construction debris, Priority's complaint states that the debris caused "slightly elevated levels of methane gas" which required the expenditure of "substantial sums to remove the debris and monitor the Property for methane gas to confirm that the Property had been properly and adequately remediated." These claims for damages arise directly out of the alleged discovered pollution, and are covered explicitly by the exclusion. Although the alleged conduct was negligence in performing the site assessment, Priority's claim depends upon the existence of the environmental contamination. See Technical

Coating, 157 F.3d at 846 (holding that a pollution exclusion applied to a claim against the insured for negligently exposing individuals to toxic vapors from roofing materials regardless of whether the roofing products were used properly or negligently because the policy excluded coverage for *injuries* sustained by breathing the vapors).

Additionally, the language of the exclusion contemplates that negligence by Ground Down will be the basis of a claim and clearly states that this type of claim is excluded. It would be a strange interpretation of the policy to say that although "negligent hiring, placement, training, supervision, retention, or, wrongful act" are covered by the exclusion, negligent performance of a site assessment is not. Furthermore, the policy specified that damages related to pollution are excluded, in addition to causes of action directly referring to pollution.

Appellees rely heavily on Evanston v. Treister, a district court case from the U.S. Virgin Islands, in their argument that the negligence and breach of contract claims against Ground Down are too removed from the pollution to "arise out of" the contamination. In that case, the court found that the pollution exclusion did not apply. 794 F.Supp. 560, 571-72 (D. V.I. 1992). However, Evanston actually supports Appellant's position by illustrating what it means to have a claim truly separated from the pollution involved. In Evanston, the insured was an architect

who designed and supervised the construction of sewer and water pipes. Id. at 563. The pipes were improperly placed together rather than separated and the water line was incorrectly placed below the sewer line. Id. at 566. These errors led to contamination of sewage into the water supply and caused a typhoid outbreak. Id. at 563. The residents who became sick sued the government, and the government filed a cross-claim against the architect. Id. The suit against the architect was not, however, a suit for damages relating to the contamination. Id. Instead, the suit sought recovery for the cost to replace the water and sewer lines, *i.e.*, to redo the work that the architect had been hired to do and had done negligently. Id. Based on this distinction, the court found that the claim against the architect sought damages "not as a result of the pollution, but as a result of the unusable condition of the water and sewer lines." Id. at 572. Therefore, the pollution exclusion did not apply because the underlying complaint "allege[d] damages to which the pollution exclusion does not apply." In contrast, the damages in this case are directly related to the contamination of the property and the resulting environmental remediation.

The district court incorrectly concluded that "it would be unconscionable at best" to interpret the pollution exclusion as covering Priority's claim against Ground Down "in light of uncontested facts that [Ground Down] in no way **caused** the pollution." (emphasis in original). We disagree. Various courts have read

12

pollution exclusions to exclude coverage for claims against insureds who were not themselves the polluters. See Northern Ins. Co. of New York v. Aardvark Associates, Inc., 942 F.2d 189, 194 (3d Cir. 1991); see also United States Fidelity & Guaranty Co. v. Korman Corp., 693 F. Supp. 253, 258 (E.D. Pa. 1988) (holding that the policy excluded coverage for the developer's failure to disclose the proximity of a former landfill to his housing development). Furthermore, we are bound by the plain language of the policy which states that the pollution exclusion applies regardless of whether the "cause for the injury or damage is the Insured's negligent hiring, [etc.] . . . or wrongful act." This language implies the exclusion applies regardless of whether the pollution results from conduct by the insured.

In discussing unconscionability, the district court stated that the "Policy would fail of its essential purpose altogether" if it was interpreted as excluding coverage here. A full review of the policy shows this to be incorrect as numerous professional services would still be covered. The policy covers Ground Down in its "capacity as an architect, engineer, landscape architect, land surveyor or planner." These capacities encompass more than environmental assessments. See Technical Coating, 157 F.3d at 846 (holding that a pollution exclusion does not nullify a general liability policy where the policy continues to provide coverage for "a wide variety of accidents and mishaps").

13

*Does the Construction Debris Fall within the Policy Exclusion?*

Appellees also argue that the construction debris is not a covered "pollutant" and, therefore, is not covered by the exclusion. The exclusion defines a pollutant as an "irritant or contaminant" and Appellees argue that the debris is neither. This is important because under Florida law, if a complaint alleges multiple grounds for liability and at least one claim is within the insurance coverage, even if other claims are not, the insurer is obligated to defend the entire suit. Nova Casualty, 424 F.Supp.2d at 1332-33 (citing Baron Oil Co. v. Nationwide Mutual Fire Ins., 470 So.2d 810, 813-14 (Fla. Dist. Ct. App. 1985)). We are, as stated above, bound by the plain language of the policy. See Admiral Ins. Co. v. Feit Management Co., 321 F.3d 1326, 1328-29 (11th Cir. 2003).

Appellees argument fails for two reasons. First, Priority's complaint states that the damages associated with the construction debris come from the elevated levels of methane gas caused by the debris and lists the debris under the heading "environmental contamination." Second, the pollution exclusion is not actually limited to irritants or contaminants. The definition for pollutants states that "irritants or contaminants" covers "waste" which includes "all . . . materials to be disposed of, recycled, stored, reconditioned, or reclaimed." Only a strained reading of this language would exclude construction debris causing elevated levels

14

of methane gas from this definition. Finally, the first sentence of the exclusion states that "Pollution / environmental impairment / contamination is not covered under this policy." The construction debris described in Priority's complaint, even without the methane gas, would be considered an environmental impairment.

## CONCLUSION

Because we find that the pollution exclusion clearly covers the claims asserted by Priority against Ground Down and Laurel Hall, we **VACATE** the district court's dismissal of James River's complaint and **REMAND** with instructions for the court to enter an order granting summary judgment for James River.