[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15905
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-00894-JDW-TBM


STATE NATIONAL INSURANCE COMPANY,
STAR INSURANCE CO.,

Plaintiffs-Counter
Defendants-Appellants,

versus

KEVIN WHITE,

Defendant-Counter
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 12, 2012)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant State National Insurance Company ("State National") appeals the district court's grant of summary judgment to Defendant-Appellee Kevin White. A former administrative aide successfully sued Defendant White, a Hillsborough County Commissioner, for sexual harassment. Plaintiff State National filed this action seeking a declaratory judgment that it had no duty to reimburse White for his defense costs under its insurance policy. The district court, ruling on cross-motions for summary judgment, concluded that State National had a duty under the policy to reimburse White for his defense costs. After review, we affirm.

## I.  FACTUAL BACKGROUND

We review first the terms of the relevant policy and then the underlying litigation that gave rise to White's claims for reimbursement of defense costs from State National.

### A.    The CGL Policy

Plaintiff State National issued a commercial general liability ("CGL") insurance policy to Hillsborough County, as the "named insured," and its employees, including Defendant White, as "insureds." The CGL policy contained an endorsement that provided public officials and employees liability insurance

2

("POELI"). Under the POELI endorsement, State National agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of a '<u>wrongful act</u>' to which this insurance applies." (Emphasis added.) The POELI endorsement also stated that State National had a "duty to defend <u>any 'suit'</u> seeking those damages." (Emphasis added.)

The POELI endorsement, however, excluded, among other things, <u>any claim</u>: (1) "arising out of bodily injury, sickness, disease, death, or mental anguish"; and (2) "<u>arising from the willful violation of any statute</u>, ordinance or regulation." (Emphasis added.)

The CGL policy also contained a self-insured retention ("SIR") endorsement, which provided that the "named insured" (Hillsborough County) would retain the sum of $350,000 as self-insured, "per occurrence and as respects combined insured damages and insured allocated costs and expenses of investigation, defense, negotiation and settlement applicable to such damages." And the SIR endorsement also provided that State National agreed to pay "its otherwise applicable limit of liability" only if "any combined insured damages and insured allocated costs and expenses . . . exceed, per occurrence," the SIR amount.

## B.    Underlying Ogden Litigation

Alyssa Ogden, White's former aide, sued White and Hillsborough County

3

alleging constitutional claims of gender discrimination, sexual harassment and retaliation based on the Equal Protection Clause and brought under 42 U.S.C. §§ 1983 and 1988 against both defendants.  Ogden's complaint also alleged state law claims of sexual harassment and retaliation, under the Florida Civil Rights Act ("FCRA"), against only Hillsborough County.[1]  For each count, Ogden's complaint sought damages, including lost wages, benefits and other past and future compensation, reinstatement, compensatory and punitive damages, attorney's fees and costs and other relief appropriate under federal or Florida law.

The jury returned a verdict in Ogden's favor, finding that she was subjected to unwanted sexual advances and sexual harassment and that she was terminated as part of the sexual harassment or because she rejected unwelcome sexual advances.  The jury awarded Ogden a total of $75,000 in compensatory damages, representing $15,000 for medical expenses and $60,000 for mental anguish.  The jury did not award any lost wages or benefits.  The trial court's judgment ordered that Ogden recover $75,000 from Hillsborough County and White.  Ogden then sought over $200,000 in attorney's fees.  Hillsborough County settled with Ogden for $278,000, representing $75,000 to satisfy the judgment against Hillsborough

---

[1]At the summary judgment stage, Ogden withdrew her retaliation claims under § 1983 and the FCRA and subsequently voluntarily dismissed her remaining FCRA claims before the case was submitted to the jury.

4

County and $203,000 for Ogden's attorney's fees.  The judgment against White remains in effect.

During the Ogden litigation, White paid for his own defense, incurring $157,730.31 in legal fees and expenses.  Hillsborough County incurred $114,713.35 in legal fees and $98,275.83 in trial costs and related expenses, for a total of $212,989.18.  Hillsborough County's total out-of-pocket was $490,989.18, which included the $203,000 settlement for Ogden's attorney's fees, the $75,000 judgment and its own $212,989.23 in attorney's fees and expenses.

Ultimately, State National paid Hillsborough County $65,989.18 under the CGL policy.  This $65,989.18 amount was Hillsborough County's total costs ($490,713.35), less the $75,000 judgment and the $350,000 SIR.  When White sought reimbursement for his legal fees, State National denied coverage and filed this declaratory judgment action.

## C.    Declaratory Judgment Action

Plaintiff State National's two-count complaint sought a declaration that: (1) the POELI endorsement excluded coverage for the claims asserted against White in the Ogden litigation (Count I); or (2) even if some claims were covered, State National had no duty to reimburse White under the SIR endorsement because the $350,000 SIR amount was not exceeded (Count II).  White filed a counterclaim for

5

breach of contract against State National, seeking reimbursement for his defense costs in the Ogden litigation.

After discovery, the parties filed cross-motions for summary judgment. The parties did not dispute that White was an "insured" under the POELI endorsement and that his acts giving rise to Ogden's claims fell within the POELI endorsement's definition of a "wrongful act." However, the parties disagreed as to whether Ogden's claims fell within the POELI endorsement's exclusions for (1) claims "arising out of bodily injury, sickness, disease, death or mental anguish" or (2) "arising from the willful violation of any statute, ordinance or regulation." The parties also agreed that State National's "duty to defend" under the POELI endorsement was modified by the SIR endorsement to become a "duty to reimburse" White's defense costs if the SIR amount was satisfied. The parties disputed, however, whether White could use only damages and costs directly attributable to "covered" claims to satisfy the SIR amount.

In its first summary judgment order, the district court granted White's summary judgment motion and denied State National's summary judgment motion as to Count I. The district court determined that, even if Ogden's state-law FCRA claims were excluded by the POELI endorsement as "claims arising from the willful violation of a statute," Ogden's constitutional claims under the Equal

6

Protection Clause, even though brought pursuant to § 1983, were not.

The district court further found that not all of Ogden's claims in her complaint were excluded by the POELI endorsement as "claims arising out of . . . mental anguish."  The district court concluded that State National's duty to reimburse White for legal fees under the SIR endorsement depended upon the claims alleged in Ogden's complaint, not on the outcome of the litigation. Although the jury awarded Ogden damages only for medical expenses ($15,000) and mental anguish ($60,000), Ogden's complaint had alleged other claims that did not "arise out of" her mental anguish, but out of her termination (i.e., her "tangible employment action" sexual harassment and retaliation claims), and her complaint had sought other relief, including lost wages, reinstatement and attorney's fees and costs.  Therefore, some of Ogden's federal § 1983 claims were covered by the POELI endorsement.  As such, the district court concluded that, under Florida law, State National had a duty to reimburse White under the SIR endorsement if the SIR amount was exhausted.

After supplemental briefing, the district court entered a second order granting summary judgment in favor of White on Count II and on White's counterclaim.  The district court determined that the SIR endorsement was

7

ambiguous as to what damages, costs and expenses—only those attributable to covered claims or also those attributable to non-covered claims—could be used to exhaust the $350,000 SIR amount. Construing the ambiguous SIR endorsement liberally in favor of the insured, as required by Florida law, the district court concluded that the entire $490,989.18 paid by Hillsborough County as a result of the Ogden litigation could be used to satisfy the SIR. Because the $350,000 SIR was satisfied by Hillsborough County's payments, the district court determined that State National had a duty to reimburse White for his defense costs of $153,730.31. State National filed this appeal.[2]

## II.  DISCUSSION

### A.    Coverage Under the POELI Endorsement

On appeal, State National argues that Ogden's § 1983 claims were excluded from coverage by the POELI endorsement's exclusion for "willful violation of any statute."[3] We agree with the district court that Ogden's federal gender

---

[2]We review the grant of summary judgment, as well as the interpretation of an insurance contract, de novo. See James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008). In this diversity case, Florida law governs as to the insurance policy. See Dempsey v. Auto Owners Ins. Co., 717 F.2d 556, 559 (11th Cir. 1983).

[3]On appeal, State National does not challenge the district court's conclusions that: (1) some of Ogden's claims for damages were not excluded by the mental anguish exclusion; (2) State National's duty to reimburse under the SIR endorsement was determined by the allegations

discrimination and sexual harassment claims arose from violation of the U.S. Constitution and did not "arise from" a violation of a "statute." Section 1983 is a remedial statute that "creates no substantive rights," but merely provides a means to bring claims of constitutional violations, in this case the Equal Protection Clause of the U.S. Constitution. See Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). The POELI endorsement unambiguously excluded only those claims arising from violations of statutes. Cf. Penzer v. Transportation Ins. Co., 545 F.3d 1303, 1310 (11th Cir. 2008) (explaining that phrase "arising out of a willful violation of a penal statute" in an exclusion "easily and logically can be read as limited to the statute giving rise to liability"). Under Florida law, insurance contracts are to be construed "in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). If State National had wanted to exclude claims arising from constitutional violations, it could have easily done so. As drafted, the exclusion for statutory violations did not exclude Ogden's equal protection claims brought pursuant to § 1983.

---

in Ogden's complaint and not by the jury's verdict; and (3) State National's duty to reimburse in excess of the SIR was triggered if any of the claims in Ogden's complaint were covered under the POELI endorsement.

State National argues that because White's underlying "wrongful act" violated a state statute, the FCRA, any separate federal claim arising from that same wrongful act is also excluded, "regardless of the legal avenue through which relief is sought." We disagree. We recognize State National's exclusion is for any claim "arising from the willful violation of a statute." Under Florida law, the phrase "arising out of" in an exclusion means "originating from" or "flowing from" and requires some causal connection, but not proximate cause. See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 539-40 (Fla. 2009). Similarly, Ogden's federal claims "arose from" White's conduct toward, and termination of, Ogden, which she claimed violated the Equal Protection Clause. Her federal claims did not arise from her state FCRA claims.

In essence, State National asks us to construe the exclusion to mean that the POELI endorsement does not apply to any claims arising from conduct that is also a willful violation of a statute. As the district court explained, "[a]t best, this argument suggests an ambiguity that must be construed against the Insurer[ ]," rather than in its favor. See Auto-Owners Ins. Co., 756 So.2d at 34 (explaining that ambiguous exclusionary clauses are construed strictly against the insurer).

## B.    Satisfaction of the SIR

Alternatively, State National argues that the SIR can be satisfied only by

10

defense costs and damages for <u>covered</u> claims.

The SIR endorsement provides that Hillsborough County retains, as a self-insured retention, $350,000 per occurrence "as respects <u>combined insured damages</u> and <u>insured allocated costs and expenses</u> of investigation, defense, negotiation and settlement applicable to such damages."[4]  Further, State National agreed to pay if "any <u>combined insured damages</u> and <u>insured allocated costs and expenses</u> exceed, per occurrence" the $350,000 retention.  The SIR endorsement does not define the phrases "combined insured damages" and "insured allocated costs and expenses."

State National contends that "insured" in these two phrases should be read to mean covered under the POELI endorsement, such that only damages for covered claims and costs and expenses related to those damages can satisfy the SIR amount.  This is one possible interpretation of the SIR endorsement.[5]

_____

[4]State National does not challenge the district court's determination that, because the SIR endorsement required Hillsborough County, as named insured, to retain $350,000 per occurrence and not per insured, if the SIR amount was satisfied as to Hillsborough County, it was also satisfied as to White.

[5]The district court pointed out that State National's interpretation may be unreasonable for two reasons.  First, it is inconsistent with the district court's earlier ruling that, under Florida law, an insurer's duty to reimburse under a SIR endorsement, like an insurer's duty to defend under a liability policy, is triggered if <u>any</u> alleged claim is covered.  <u>See, e.g.</u>, <u>Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.</u>, 470 So.2d 810, 815 (Fla. 1st DCA 1985) (explaining that an insurer has a duty to defend the entire action if some alleged claims are covered and some are not, at least until the covered claims are eliminated from the suit).  Second, it may not be possible or appropriate to apportion defense fees and costs between covered and non-covered claims

11

However, the district court noted another reasonable interpretation, that is, that the phrase "insured damages" means damages incurred by the named insured (or perhaps any insured), as opposed to those incurred by the insurer or a third party. The district court noted that this interpretation "is more consistent with the general purpose of the SIR Endorsement and the Policies as a whole," to limit the exposure of Hillsborough County and its employees to $350,000 per occurrence. See U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 883 (Fla. 2007) (explaining that an insurance policy must be read "as a whole, endeavoring to give every provision its full meaning and operative effect"). Under this interpretation, the SIR endorsement could be satisfied by defense costs and expenses for both covered and non-covered claims incurred by Hillsborough County.

Accordingly, we agree with the district court that the SIR endorsement is ambiguous as to which damages and costs count toward the SIR. See Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 785 (Fla. 2004) (explaining that language in an insurance policy is ambiguous if it "is susceptible to more than one

---

given that Ogden's § 1983 and FCRA claims were governed by the same standards of liability applicable in employment discrimination cases. See Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000) (noting that § 1983 gender discrimination claim involves the same analysis as a Title VII disparate treatment claim); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (noting same for FCRA gender discrimination claims). We need not address this question, however, because even assuming State National's interpretation is reasonable, it is not the only reasonable interpretation and, thus, the SIR endorsement is ambiguous and must be construed in favor of the insured.

12

reasonable interpretation, one providing coverage and the other limiting coverage." (internal quotation marks omitted)).  And, given that the SIR endorsement is ambiguous, the district court properly construed it in favor of coverage.  See Auto-Owners, 756 So.2d at 34 ("[A]mbiguous insurance policy exclusions are construed against the drafter and in favor of the insured.").  Therefore, the district court did not err in concluding that Hillsborough County's $490,989.18 in costs and expenses incurred in the Ogden litigation, whether or not directly attributable to covered claims, satisfied the SIR amount and that State National was required under the SIR endorsement to reimburse White for his own defense costs and expenses.

**AFFIRMED.**