[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13544
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-60379-WJZ


PORT CONSOLIDATED, INC.,

Plaintiff - Appellant,

versus

INTERNATIONAL INSURANCE COMPANY OF HANNOVER, PLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 8, 2020)

Before GRANT, LAGOA, and HULL, Circuit Judges.

LAGOA, Circuit Judge:

Port Consolidated, Inc. ("Port"), a Florida corporation, appeals the district court's order granting summary judgment in favor of International Insurance Company of Hannover, PLC ("InterHannover"), a foreign corporation, on Port's breach of contract claim, as well as the district court's final order dismissing the remaining counts of Port's complaint and the final judgment in favor of InterHannover.  For the reasons discussed below, we affirm both orders and the final judgment.

## I.     FACTUAL AND PROCEDURAL HISTORY

Port is a fuel distribution company that operates a cardlock fuel facility at 6951 Garden Road, Riviera Beach, Florida (the "Garden Road Facility").  According to the parties, cardlock facilities are "similar to traditional gas stations, but are unattended fueling facilities at which only authorized customers who have a preexisting contractual relationship can pump gasoline and diesel fuel."  For a customer to be granted access to a cardlock facility, that customer must apply for and then sign an agreement with the facility's owner.  If approved, the customer receives a "CFN card," which can be used to pump fuel at a cardlock facility, such as Port's Garden Road Facility.  When a customer uses a CFN card at a cardlock facility, a computer system records information about the transaction, which is used to generate a weekly invoice that is issued to the customer.  Customers can request restrictions on their CFN cards, including limits on the gallons of fuel to be pumped

2

per transaction, the frequency of transactions, and the hours during which fuel may be pumped. These restrictions are "pegged" to the CFN card so that the facility's computer system can enforce the restrictions.

InterHannover issued a commercial property insurance policy (the "Policy") to Port, effective from January 1, 2014, to January 1, 2015. Under the Policy, InterHannover provides coverage for "direct physical loss to covered property at a 'covered location' caused by a covered peril," subject to a deductible. As to the deductible, the Policy specifically states that "[InterHannover] pay[s] only that part of 'your' loss over the deductible amount stated on the 'schedule of coverages' in any one occurrence," and the schedule of coverages form provides that the per occurrence deductible is $1,000. The Policy's general definitions section does not contain a definition for "occurrence." The supplemental coverages endorsement of the Policy, however, contains three separate definitions of "occurrence": one for "Terminal Access Card" supplemental coverage,[1] one for "Money and Securities" supplemental coverage, and one for "Employee Dishonesty" supplemental coverage.

In February 2015, Port discovered that it had a fuel inventory shortage. Port's investigation concluded that an incorrectly programmed setting on its fuel pumps at the Garden Road Facility, originating from a 2013 upgrade to that facility,

---

[1] For example, in the Terminal Access Card supplemental coverage endorsement, "occurrence" is defined as "an unauthorized use or series of related unauthorized uses involving one or more persons."

had not enforced the CFN card fuel limitation requested by Allied Trucking of Palm Beach ("Allied"), one of Port's customers. Specifically, Allied had placed a fuel purchase limitation of seventy-five gallons of fuel per transaction on its CFN cards. The incorrect setting, however, allowed Allied's affiliated drivers, who work as independent contractors, to exceed the seventy-five-gallon limit by up to an extra hundred gallons despite Allied only being invoiced for seventy-five gallons per transaction. According to Port, Allied's affiliated drivers engaged in thousands of fuel-dispensing transactions during 2014 and early 2015 at Port's Garden Road Facility. Some of those drivers discovered the programming error at the Garden Road Facility and exploited that error to steal fuel over Allied's seventy-five-gallon limitation. During the time period of the alleged thefts, the per-gallon price of gasoline never exceeded four dollars. The fuel shortages at the Garden Road Facility ended after the programming error was corrected. Port invoiced Allied for the extra fuel taken by its drivers, and Allied refused to pay.

On February 19, 2015, Port informed InterHannover that it was asserting a claim under the Policy for the loss resulting from the allegedly stolen fuel. After InterHannover denied coverage, Port filed a Complaint against InterHannover in Florida state court on December 28, 2015. On February 29, 2016, InterHannover removed the case to the Southern District of Florida based on diversity jurisdiction. On March 22, 2017, Port filed its Amended Complaint, asserting claims for: (1)

declaratory judgment entitling it to coverage under the Policy; (2) breach of contract; (3) reformation of the Policy to include "blanket coverage"; and (4) declaratory relief regarding coverage limits, including whether there was a blanket policy limit for Port's loss of fuel contents.  Port's two claims regarding blanket coverage were not included in its original Complaint.

On March 30, 2017, the parties filed a Stipulation, which memorialized their agreement that the Policy's business personal property limit of $23,015,224 was intended to be written as a "blanket basis" and that required InterHannover to withdraw its affirmative defenses seeking to limit the amount of coverage for Port's losses to either $5,000 or $71,095.  Although filed after the Amended Complaint, the parties executed the Stipulation before Port filed its Amended Complaint.  On April 5, 2017, InterHannover filed its Answer to the Amended Complaint, withdrawing its affirmative defenses concerning the Policy's blanket coverage limits.

On June 11, 2018, InterHannover moved for summary judgment, arguing that Port was not entitled to coverage because the alleged thefts were expressly excluded under the Policy and that each alleged theft was a separate occurrence that did not exceed the $1,000 deductible in the Policy.  On March 21, 2019, the district court granted InterHannover's motion for summary judgment.  Applying the Florida Supreme Court's decision in *Koikos v. Travelers Insurance Co.*, 849 So. 2d 263 (Fla.

5

2003), the district court observed that, "absent contrary language in the policy, each act of fuel theft was a discrete occurrence for insurance purposes." Reviewing the Policy, the district court rejected Port's argument that the specific definition of "occurrence" used in three sections of the supplemental coverages endorsement governed the entire Policy. The district court noted that "no language" was included in these supplemental sections to state that "said definitions are intended to modify anything in the core property coverage segment of the [P]olicy" and that "occurrence" was not defined in other sections of the Policy. The district court also rejected Port's alternative argument that the Policy was ambiguous under Florida law, finding that "the plain meaning of occurrence in the [P]olicy, where not accompanied by a definition," did not encompass the grouping together of "discrete incidents with separate immediate causes" as a single occurrence and that "[t]he fact that an alternative definition of occurrence is found in some segments of the [P]olicy dealing with particular kinds of losses should not be read to make the meaning of occurrence in the rest of the [P]olicy ambiguous." Noting that it was undisputed that Port's losses from each individual act of theft did not exceed the Policy's deductible, the district court found that InterHannover was not required to cover Port's losses and granted summary judgment in favor of InterHannover on Port's breach of contract claim.

6

The district court ordered supplemental briefing as to whether the remaining counts concerning blanket coverage could stand alone without the breach of contract claim and whether Port should be awarded attorney's fees for those counts based on the parties' Stipulation. Following the supplemental briefing, the district court entered an order dismissing Counts III and IV—the blanket coverage-related counts—of Port's Amended Complaint. The district court found that those counts were now moot, as the parties "agree as to how their contract should read and be interpreted on this point" and no case or controversy was present for the court to resolve. The district court also entered final judgment in favor of InterHannover. This appeal ensued.

## II.    STANDARD OF REVIEW

"We review a 'district court's grant of summary judgment *de novo,* applying the same legal standards used by the district court.'" *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002) (quoting *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Guideone Elite Ins.*

7

*Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325–26 (11th Cir. 2005) (quoting *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998)). Additionally, the interpretation of an insurance policy's provisions is a question of law, which we review *de novo*. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008).

## III.    ANALYSIS

On appeal, Port argues that the district court erred in granting summary judgment in favor of InterHannover by concluding that the alleged fuel thefts constituted multiple "occurrences" under the Policy and that those thefts did not exceed the Policy's deductible. Port contends that, under Florida law, all of its losses should be construed as a single "occurrence" or, alternatively, that there is a disputed issue of material fact as to the definition of "occurrence" within the Policy that precluded summary judgment in favor of InterHannover. We find Port's arguments without merit.

"Under Florida law,[2] insurance contracts are construed according to their plain meaning." *Id.* at 1274 (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *accord Hyman*, 304 F.3d at 1186; *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). An ambiguity in an

---

[2] As this diversity action was initiated in Florida, we apply the substantive law of Florida. *See James River*, 540 F.3d at 1274 n.1.

insurance policy's language is "'construed against the insurer' in favor of coverage." *James River*, 540 F.3d at 1274 (quoting *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998)).  In order for an insurance policy's provision to be ambiguous, "the provision must actually be ambiguous." *Taurus*, 913 So. 2d at 532.  If "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Id.* (alteration in original) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). "However, . . . 'courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" *James River*, 540 F.3d at 1274 (quoting *Taurus*, 913 So. 3d at 532).  Furthermore, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (quoting *Auto-Owners*, 756 So. 2d at 34).

The term "occurrence" is not defined in the general definitions section of the Policy.  Under Florida law, "when an insurance coverage term is not defined, the term should be given its plain and ordinary meaning." *Barcelona Hotel, LLC v. Nova Cas. Co.*, 57 So. 3d 228, 230–31 (Fla. Dist. Ct. App. 2011).  "[I]n construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries." *Id.* at 231 (quoting

9

*Watson v. Prudential Prop. & Cas. Ins. Co.*, 696 So. 2d 394, 396 (Fla. Dist. Ct. App. 1997)).

Black's Law Dictionary defines an "occurrence" as "an accident, event, or continuing condition." *Occurrence*, *Black's Law Dictionary* (11th ed. 2019). Additionally, the Florida Supreme Court in *Koikos* addressed what "occurrence" means under Florida law in "occurrence-based" insurance policies. In *Koikos*, the Florida Supreme Court answered a certified question from this Court about whether, in the context of a negligent security claim, separate shootings of multiple victims constituted multiple occurrences under an occurrence-based insurance policy. 849 So. 2d at 264. In answering the certified question, the Florida Supreme Court adopted the "cause theory," which looks to the cause of an injury in defining an "occurrence" under an insurance policy. *See id.* at 271. The Florida Supreme Court concluded that "consistent with the 'cause theory,' . . . in the absence of clear language to the contrary, . . . 'occurrence' is defined by the immediate injury-producing act." *Id.* The Florida Supreme Court then examined "the independent *immediate* acts that gave rise to the injuries" in the case and found that "each shooting constitute[d] a separate occurrence" under the insurance policy as each individual shooting was "distinguishable in time and space." *Id.* at 272–73 (emphasis in original).

10

In *Guideone Elite Insurance Co.*, this Court applied *Koikos* to a declaratory judgment action filed by an insurer seeking a determination regarding its duty to defend or indemnify its insured from a state court negligence action arising from claims involving sexual assault, kidnapping, battery, robbery, and false imprisonment. 420 F.3d at 1323–26, 1329, 1331–32. This Court, in interpreting a sexual misconduct exclusion contained in the insured's general commercial liability policy, found that the various injurious acts committed by the perpetrator "were separated by sufficient 'time and space' so as to constitute separate occurrences under *Koikos*" and further concluded that "[i]n an 'occurrence-based' policy, as distinguished from a per person/per accident policy, the limits of liability are defined by the occurrence and not on a per person basis." *Id.* at 1331–32 (quoting *Koikos*, 849 So. 2d at 269).

Port argues that *Koikos* does not apply here as, unlike that case, the Policy's general definition section does not define the term "occurrence." Port notes that a definition of "occurrence" is contained within three sections of the supplemental coverages endorsement ("Terminal Access Card" coverage, "Money and Securities" coverage, and "Employee Dishonesty" coverage), which each define "occurrence" to include multiple or "a series" of either unauthorized uses or actions. Port contends that the supplemental coverage definitions for occurrence either should be applied

11

to the Policy as a whole or demonstrate an ambiguity in the Policy that should be interpreted in Port's favor.  We disagree.

Under Florida law, a contract should not "be read so as to make one section superfluous, and so '[a]ll the various provisions of a contract must be so construed . . . as to give effect to each,'" i.e., not "interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so." *Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. Dist. Ct. App. 2013) (alteration in original) (quoting *Univ. of Miami v. Frank*, 920 So. 2d 81, 87 (Fla. Dist. Ct. App. 2006)).  Here, the Policy only defines "occurrence" to include multiple or a "series" of acts or unauthorized uses within a portion of the supplemental coverages endorsement.  Determining that specific definitions of "occurrence" within certain supplemental coverages govern the entire Policy would render the absence of "occurrence" from the core Policy's general definitions section meaningless.  Rather, the reasonable interpretation of the Policy as a whole is that the parties specifically expanded the scope of "occurrence" to include a series of actions if, and only if, a claim was made under those specific supplemental coverage provisions.  An "ambiguity is not invariably present when a contract requires interpretation." *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1539 (11th Cir. 1995).  "The failure to define a term involving coverage does not necessarily render the term ambiguous." *Barcelona*, 57 So. 3d at 230.  Thus, the fact that

12

"occurrence" is defined in sections of the supplemental coverage endorsement, but not in the Policy's general definitions section, does not make the term ambiguous.

Because the Policy is not ambiguous and there is no "clear language to the contrary," we find that, under Florida law, an "occurrence" under the Policy is defined by the "immediate injury-producing act." *See Koikos*, 849 So. 2d at 271. Here, the immediate injury-producing acts consist of numerous alleged fuel thefts by several of Allied's affiliated drivers from different fuel dispensers at the Garden Road Facility on different days over the course of a year. Because each alleged fuel theft was an act separated and distinguishable in "time and space," we find that each alleged act of fuel theft constituted a separate "occurrence" under the Policy. *Cf. Guideone*, 420 F.3d at 1332; *Koikos*, 849 So. 2d at 272.

We now turn to whether any of these occurrences exceeded the Policy's $1,000 deductible. It is undisputed that the price of fuel when the alleged thefts occurred did not exceed four dollars per gallon and that the additional gallons of stolen fuel per transaction did not exceed one hundred gallons. Therefore, we conclude that none of Port's losses exceeded the Policy's deductible and that InterHannover was not required to pay Port under the Policy for those alleged fuel thefts. Accordingly, the district court properly granted summary judgment in favor of InterHannover on Port's breach of contract claim.

13

Finally, we address Port's argument that the district court erred by dismissing its blanket coverage-related claims and by not awarding Port attorney's fees on those claims. In its dismissal order, the district court noted that the parties had entered into a Stipulation that covered the dispute regarding blanket coverage and that neither party sought to withdraw the Stipulation. As such, the district court found that there was no longer any justiciable issue regarding these claims and dismissed them as moot. We agree with the district court.

"It is well established that '[u]nder Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.'" *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1255 (11th Cir. 2017) (en banc) (alteration in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). This actual controversy must exist at all stages of review, not just when the complaint is filed. *Id.* "Thus, even a once-justiciable case becomes moot and must be dismissed 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Here, once the district court properly determined that each alleged fuel theft was a separate occurrence that did not exceed the Policy's deductible, the blanket coverage-related claims no longer presented "live" issues for the district court to resolve. *See id.* Additionally, the parties' Stipulation fully resolved the blanket coverage-related issues.

14

We also find Port's demand for attorney's fees for these claims without merit. Florida Statute § 627.428(1) provides for an insured's entitlement to attorney's fees "[u]pon the rendition of a judgment or decree . . . against an insurer." *See also Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1219 (Fla. 2016) ("Section 627.428 provides that an incorrect denial of benefits, followed by a judgment or its equivalent of payment in favor of the insured, is sufficient for an insured to recover attorney's fees."). Here, no such judgment or decree was rendered against InterHannover. While InterHannover agreed under the Stipulation that a blanket coverage amount applied if it was required to pay Port's claims under the Policy,[3] InterHannover ultimately was not required to cover Port's losses. We, therefore, find that district court did not err by dismissing these claims and not awarding attorney's fees to Port.

## IV.    CONCLUSION

Because each alleged fuel theft Port suffered constituted a separate occurrence under the Policy and none of those alleged thefts exceeded the Policy's deductible,

---

[3] Port claims that the Stipulation should operate as a judgment against InterHannover, as the Stipulation resolved the "critical" blanket coverage issues in favor of Port and was filed after Port's Amended Complaint that included the blanket coverage-related claims. As noted earlier, however, the Stipulation was signed and ready for filing before Port filed its Amended Complaint. Indeed, the parties' discussions regarding a stipulation began more than a month prior to the filing of the final Stipulation on March 30, 2017. A review of the record shows that InterHannover had signed the final Stipulation, which was prepared by Port, and emailed the Stipulation to Port's counsel on March 16, 2017—six days before Port filed its Amended Complaint. In a subsequent email two days prior to Port filing its Amended Complaint, InterHannover's counsel confirmed with Port's counsel that the Stipulation was ready to be filed. For whatever reason, Port did not file the Stipulation until eight days after it filed the Amended Complaint.

the district court properly entered summary judgment in favor of InterHannover.

Accordingly, we affirm the district court's final judgment in favor of InterHannover.

**AFFIRMED.**