**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-13662

Non-Argument Calendar

————————————

KAWA ORTHODONTICS, LLP,

*Plaintiff-Appellee,*

*versus*

DEPOSITORS INSURANCE COMPANY,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-81884-RS

————————————

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Kawa Orthodontics displayed in its office a large aquarium system consisting of two large tanks connected by a bridge. When a crack formed in the bridge, Kawa hired Erisa Improvements to

repair the aquarium. But as repairs were underway, two more cracks appeared in one of the tanks. Kawa then filed a claim under its insurance policy with Depositors Insurance Company, but Depositors denied coverage, leading to this suit. According to Depositors, Erisa's negligence caused the damage that triggered a policy exclusion. But on cross motions for summary judgment, the district court ordered judgment for Kawa. It concluded that the loss stemmed from a covered accident, not negligent repairs, and that even if the repairs had caused the damage, the company could not have been negligent in the absence of an identifiable industry standard of care or industry-approved repair methodology.

We disagree. Viewing the facts in the light most favorable to Depositors, the damage could have been caused by the attempt to repair the initial crack. And, although industry standards are evidence of the appropriate standard of care, the existence of industry standards is not dispositive. Therefore, we reverse and remand for further proceedings.

## I.

At all relevant times, Kawa had a commercial insurance policy with Depositors. Under the policy, Depositors would "pay for direct physical loss or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Doc. 1-9 at 45. The covered causes include "equipment breakdown," defined as damage "caused by or resulting from an 'accident' to 'covered equipment.'" *Id.* at 53. The policy defined "accident" as "a fortuitous event that causes direct physical damage to 'covered equipment.'"

*Id.* at 81. Additionally, "[t]he event must be one of" several listed occurrences, including "[m]echanical breakdown, including rupture or bursting caused by centrifugal force." *Id.* Notably, all "accidents" that are "cause[d] [by] other 'accidents'" or "are the result of the same event will be considered one 'accident.'" *Id.* at 53. But the policy also included several exclusions. Among other exclusions, Depositors would not pay if the damage was caused by "negligent work" defined as "faulty, inadequate or defective . . . [d]esign, . . . workmanship, work methods, repair, [and] construction," unless such negligence "results in a Covered Cause of Loss." *Id.* at 68–69.

Kawa had a large aquarium with a bridge connecting two tanks on either side of a hallway; patients could walk underneath the bridge and fish could swim above them. On or about March 1, 2021, Kawa discovered a crack in the glass of the bridge connecting the two large tanks. After discovering the damage, Kawa drained the water from the aquarium and hired Erisa to remove the bridge. On April 24, while removing the bridge, the workers erected a platform between the two tanks on which the workers stood and placed their equipment. During these repairs, two large cracks appeared in one of the tanks. Based on the video, and taking the facts in the light most favorable to the Depositors, it appears that the workers' activity on the bridge caused the cracks to form in the tank.

On April 29, 2021, Kawa filed a claim with Depositors to cover the damage that occurred on April 24. While deposing witnesses in preparation for trial, Kawa's attorney explained that Kawa

"wasn't asking for the insurance company to pay for the crack that was already there on the bridge," only "the crack that occurred from when [the workers] were repairing it." Doc. 32 at 44.

In response to the claim, Depositors retained an expert engineer to investigate the loss. The expert concluded "within a reasonable degree of engineering certainty that the loss was [the] result [of] the improper repair work performed by Erisa." Doc. 38-7 at 2. Specifically, the expert obtained surveillance footage that captured the workers conducting repairs and observed "Erisa personnel's improper use of the aquariums acrylic walls to support a makeshift scaffold." Doc. 38-25 at 3; Doc. 38-1. As described by the expert, the scaffold was a "walkway that was resting on the top of clear plastic sides" of the two tanks. Doc. 38-25 at 3; Doc. 38-7 at 2; Doc. 38-1. He determined that "[t]he weight of the worker(s) on the vertical fish tank walls overstressed the plastic sides of the fish tanks," causing the cracks. Doc. 38-7 at 2. Additionally, he believed that "if nobody did anything," if the tank were "left by itself," or if the workers "would have used conventional equipment . . . instead of erecting a . . . scaffold," then the additional cracks "would not have occurred." Doc. 38 at 170; Doc. 38-25 at 3.

The expert also testified that there was "[m]ost probably" a way to repair the initial crack without removing the bridge, at least temporarily. Doc. 38 at 26 –27. He suggested "cementing" a "slice of acrylic" to "hold it together and prevent the stress from continuing." *Id*. at 26–27. But given the age of the glass and the presence of the initial crack, he also described the subsequent cracks as

"basically an accident waiting to happen," and he suggested that there may not be a "long-term fix" for the cracked bridge. *Id.* at 29, 80. After investigating, Depositors concluded that "the loss was due to the negligent work of Erisa Improvements" and denied coverage. Doc. 43-11 at 1.

Kawa commenced the present suit in Florida state court for breach of contract over the loss that occurred on April 24, which Depositors removed to federal court. The parties then filed cross motions for summary judgment. Kawa contended that an accidental mechanical breakdown caused the initial crack in the bridge, resulting in a "total loss of the entire aquarium system as it is a single functional system that requires all parts to function for its intended purpose." Doc. 39 at 2. The original accident also caused a subsequent accidental mechanical breakdown and additional cracks in the tank walls, which again resulted in the "total loss" of the aquarium system. *Id.* Depositors argued that Kawa was not entitled to damages, in part, because Erisa's negligent repairs triggered a policy exclusion. It also insisted that the initial crack in the bridge was not included in the original claim, not mentioned in the complaint, and could not be considered as a basis for coverage at summary judgment.

The district court granted summary judgment for Kawa. According to the court, Depositors "ha[d] not demonstrated how the repair work was negligent, or how [Kawa]'s damage was caused by faulty, inadequate, or defective workmanship, repair, or maintenance." Doc. 104 at 7. Instead, the new cracks were inevitable after

the original cracks to the bridge appeared. The court also relied on Kawa's expert's testimony that "there is no proper methodology to repair acrylic glass." Doc. 37 at 22; Doc. 104 at 7. In the absence of such a methodology, there was "no identifiable standard of care applicable to the repair work in this instance" and the repair company could not be negligent. Doc. 104 at 8. After summary judgment, Depositors moved for reconsideration, which the district court denied. Depositors timely appealed.

## II.

We review the district court's grant of summary judgment *de novo* and construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). We review the denial of a motion to reconsider for abuse of discretion. *United States v. Simms*, 385 F.3d 1347, 1356 (11th Cir. 2004).

## III.

Depositors presents three issues on appeal. First, it argues that the district court reversibly erred by determining "that the initial loss to the bridge was a covered loss," even though it was not mentioned in the complaint, "and then premising its finding of coverage for the second loss to the larger tank on that determination." Appellant's Br. at 28–29. Next, it argues that the district court erred by concluding that the cracks in the tank were a covered loss not subject to any policy exclusions. Last, it argues that the district court abused its discretion when it denied the motion for

reconsideration. Viewing the facts and drawing all inferences in Depositors favor, a jury could reasonably conclude that the damage to the tank was caused by Erisa's negligent repairs. Therefore, we need not reach the other issues.

First, a jury can determine the standard of care that the Erisa workers owed Kawa. The district court concluded that because "there is no industry-approved methodology to repair acrylic glass of the type found in Plaintiff's aquarium system . . . there is no identifiable standard of care applicable to the repair work" and therefore "the Court cannot hold that the repair company breached its duty of care." Doc. 104 at 8. But the district court misapplied Florida law. *See James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 n.1 (11th Cir. 2008) ("In this diversity action initiated in Florida, we apply the substantive law of the forum state."). Under Florida law, "the standard of care is a question of fact for the jury." *Johnson v. Wal-Mart Stores E., LP*, 389 So. 3d 705, 712 n.3 (Fla. 5th Dist. Ct. App. 2024), *review denied*, No. SC2024-1108, 2024 WL 4370566 (Fla. Oct. 2, 2024). To that end, "[w]hat usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *Nesbitt v. Cmty. Health of S. Dade, Inc.*, 467 So. 2d 711, 714 (Fla. 3d Dist. Ct. App. 1985) (quoting *Texas & Pacific Ry. Co. v. Behymer*, 189 U.S. 468, 470 (1903)). The "general rule" is that "[t]he standard of due care is such care as a prudent person would exercise under the circumstances of the particular case, and conformity to customary or usual conduct or methods cannot amount to more than a circumstance to be considered"

along with the other circumstances at play. *Id.* at 713–14 (citation omitted). It is simply not the case that workers cannot be negligent absent agreed upon industry standards.

Next, the jury could conclude that Erisa was negligent while conducting repairs and that its negligence caused the damage. The district court determined that the initial crack in the bridge was an accident that caused the subsequent accidental cracks in the tank. In reaching this conclusion, the district court relied solely on Depositors's expert testimony that the subsequent cracks were "an accident waiting to happen" and that there was no "long-term solution for the initial crack." Doc. 104 at 7. But "[i]t is axiomatic that under Florida law the question of proximate cause is for the jury," and the jury could have reasonably reached a different conclusion based on the evidence. *Dabney v. Yapa*, 187 So. 2d 381, 383 (Fla. 3d Dist. Ct. App. 1966). For example, nearly two months passed between when Kawa first discovered the initial crack on March 1 and when the subsequent cracks formed on April 24. Depositors's expert concluded "within a reasonable degree of engineering certainty" that these new cracks "would not have occurred" if "nobody did anything," if the tank were "left by itself," or if the workers "would have used conventional equipment . . . instead of erecting a . . . scaffold." Doc. 38 at 170; Doc. 38-7 at 2; Doc. 38-25 at 3. Further, the expert opined that the cracks formed as a result of "Erisa personnel's improper use of the aquariums acrylic walls to support a makeshift scaffold" and "[t]he weight of the worker(s) on the vertical fish tank walls overstress[ing] the plastic sides of the fish tanks." Doc. 38-7 at 2; Doc. 38-25 at 3.

Kawa presents two arguments to escape this conclusion.

First, Kawa insists that the secondary cracks were an "expansion" of the first accident, and attributing the cracks to negligent repairs would effectively "impose an unwritten 'intervening cause' exception." Appellee's Br. at 53, 57. But under Florida law, "to constitute proximate cause, there must be such a natural, direct, and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred." *Dep't of Child. & Fam. Servs. v. Amora*, 944 So. 2d 431, 436 (Fla. 4th Dist. Ct. App. 2006). On this record, the jury could reasonably conclude that the workers' negligent repairs were the proximate cause of the subsequent cracks instead of a prior accident that occurred at least two months earlier and was localized in a separate part of the aquarium that had already been removed.

Second, Kawa argues that even if negligent repairs caused the subsequent cracks, the loss would still be covered because the negligent repair "result[ed] in a Covered Cause of Loss," or more specifically, "Equipment Breakdown." Appellee's Br. at 58–59. Therefore, the loss would not be excluded under the policy terms. This argument begs the causation question. The policy defines "Equipment Breakdown" as damage "caused by or resulting from an 'accident' to 'covered equipment.'" Doc. 1-9 at 53. But if the cracks were caused by negligent repairs instead of an accident, then the loss would not meet the definition of "Equipment Breakdown."

Finally, to the extent Kawa argues that the loss occurred when the initial crack in the bridge formed, this argument fails to

justify summary judgment in its favor. Consistent with its arguments in support of its motion for summary judgment, Kawa insists that "the aquarium system, and all of its components, constitute a system as a whole" such that "[d]amage to one component is damage to the whole system." Appellee's Br. at 30. Therefore, "[t]he initial accident resulted in a total loss of the entire aquarium system as it is a single function system that requires all parts to function for its intended purpose." Doc. 39 at 2. But the effect of this initial crack is anything but certain. Depositors's expert testified that there was "[m]ost probably" a way to repair this crack in the bridge without removing it. Doc. 38 at 27. As one way to repair the bridge, he suggested that "cementing" a "slice of acrylic" to the crack would "hold it together and prevent the stress from continuing," at least temporarily. *Id.* And the video capturing the attempted repairs reflects that the initial cracks were confined to the bridge and the subsequent cracks appeared in the tank when workers tried to repair the bridge. In light of this evidence, we believe a jury could reasonably find that the initial crack did not trigger a "total loss of the entire aquarium system." Doc. 39 at 2.

## IV.

We **REVERSE** and **REMAND** for further proceedings.